UTICA,
Aug. 1826.

Gallager
v.
Brunel.

---

GALLAGER and MASON *against* BRUNEL.

An action lies for a false affirmation as to the credit of a third person, by which the plaintiff is induced to sell him goods, and is thereby injured; but not on the ground of a parol promise to endorse for the third person, by which the plaintiff is led to the sale; though the defendant know that such third person is insolvent at the time.

ON demurrer to the declaration. The first count stated, that on the 9*th* of *April*, 1823, *Castro & Henriques* proposed to purchase of the plaintiffs a quantity of cotton, at a certain price; part to be paid in cash, and part to be secured by the promissory note of the purchasers endorsed by the defendant, at 4 months; that *C. & H.* were then unable to pay for the cotton; and the plaintiffs there-

To warrant an action for a deceitful representation, it must assert a fact or facts as existing in the present tense. A promise to pay, though accompanied, at the time, with an intention not to perform, is not such a representation as can be made the ground of an action at law. The party should sue upon the promise; and if this be void, he has no remedy.

In assumpsit on a promise to endorse the note of another, the declaration should aver that a note was drawn and tendered for endorsement.

A sale of goods to A., on the request of B., is a good consideration for B's promise to pay for them. But the promise being collatteral, should be in writing; otherwise, it is void by the statute of frauds.

fore unwilling to sell all, or any part, on their sole credit; and the defendant knew this. Yet, contriving and intending to injure and defraud the plaintiffs; and to induce them to sell and deliver the cotton to *C. & H.*; and thereby subject the plaintiffs to the loss of the balance due after the cash payment, the defendant falsely and deceitfully represented and held out to the plaintiffs, that he, the defendant, was willing to endorse the proposed note; and with the like intent, &c. falsely, fraudulently and deceitfully encouraged and induced the plaintiffs to sell and deliver the cotton. That they did sell and deliver it, in confidence of such false, fraudulent and deceitful representation, &c. : when, in truth, the defendant was then not willing, and did not mean or intend to endorse the note, or make himself responsible; nor did he then, nor had he at any time since endorsed, or made himself legally responsible. By means whereof the plaintiffs lost the cotton and the price.

The second count averred, that *C. & H.* were in bad credit and unfit to be trusted, at the time of the sale. But the defendant, well knowing this; and contriving and intending to defraud and injure the plaintiffs, and wrongfully and deceitfully to enable *C. & H.* to obtain the possession of the cotton, and convert it to their own use, without paying the plaintiffs for it; falsely, fraudulently and deceitfully represented to the plaintiffs, and gave them to understand and believe, that, in case they would sell the cotton to *C. & H.*, the defendant would become answerable to the plaintiffs, for so much as should be unpaid, by endorsing the note or notes of *C. & H.*, &c.; that without such representation, they would not have sold the cotton, &c. (*In other respects, this count was substantially the same as the first.*)

General demurrer and joinder.

*C. D. Colden*, in support of the demurrer. There is no averment that the defendant was ever required to perform. Even admitting him to be bound, his obligation was conditional; and he cannot be made liable, till a note was drawn and tendered for endorsement.

There was no consideration for the promise of the defendant; and if otherwise, it is a fatal objection that there was no note in writing, to take the case out of the statute of frauds. The declaration is on an assumpsit; and it is evident, from its language taken together, that there was no note in writing; because it complains that the defendant never would render himself responsible in any way. This promise was collateral; and it is directly within the first class of promises enumerated by *Kent*, C. J., in *Leonard* v. *Vredenburgh*, (8 *John. Rep.* 39,) which have always been holden to be within the statute of frauds, and void.

The action cannot be sustained as one in nature of an action of deceit. I am aware that actions have been sanctioned on fraudulent misrepresentations as to the credit of another, by which vendors have suffered an injury. But these representations were always of an existing fact; that the vendee *is* worthy to be trusted; not a mere promise to pay, grounded on that fact. Besides; two things must concur to maintain the action. The defendant must not only know, or have strong reason to believe, that what he says is false; but the plaintiff must be ignorant that the vendee is unworthy of credit. Here the plaintiffs themselves aver, that they knew the vendee was not worthy to be trusted; and reposed on the promise of the defendant. They could not be deceived. They do not pretend to have been deceived.

*P. W. Radcliff* and *G. Griffin*, contra. The action is for the deceit; and no averment of consideration is necessary. But for the fraud, no sale at all would have been made. The principle of the action is well established. (6 *John.* 181. 13 *id.* 224. *id.* 325, 395. 1 *id.* 414. 3 *Ld. Raym.* 31. 1 *Campb.* 4. 3 *T. R.* 51. 3 *Bulstr.* 95. *Com. Dig. Action on the case for a deceipt*, (*A.* 1.) 13 *Ves.* 134. 3 *Ves. & Bea.* 112.)

But we are told the representation here was promissory; that it was in the future tense. Now, is there any difference between a false representation, and a false prom-

ise ? The moral demerit is the same. Knowing that *A.* is not trust worthy, we, with intention to decoy our neighbor into false confidence, say, " we will endorse his note." Is not this the strongest representation ? Is it not more likely to deceive than any other mode of representation ? Can any man cheat with impunity, because he does not do it in writing ? If a man make an honest promise, that is quite another affair.

But if here be a promise alleged, the court are to suppose that it was in writing. The objection must be made on the trial. It cannot arise upon demurrer. (1 *Saund.* 276, *a. note* (2). 15 *John.* 426, *per Spencer, J.*)

*Colden,* in reply. The plaintiff cannot be permitted, in this way, to turn a mere promise into a tort. The proposition laid down in the opening, that to warrant an action, the deceit must refer to present existing circumstances, is not answered by a single authority cited ; nor can it be answered by authority or principle. We are referred to the old case of *Pasley* v. *Freeman,* (3 *T. R.* 51.) There it was, at first, very seriously doubted whether fraudulent words of the present tense, asserting an existing fact, would sustain the action. And it has not been, without a great and constant struggle, that even this case has been sustained. The case may be likened to one in the criminal law, relative to obtaining goods upon false pretences. A mere promise was never held to sustain an indictment. The pretence must be of an existing fact. It may as well be averred that a parol promise, by an executor, to pay his testator's debt, is a false affirmation ; and that, therefore, he should be answerable for a deceit. Is it competent to say, that at the time of the promise, the defendant did not mean to perform ?

No man reading this declaration, can doubt that this promise was by parol. The language of pleading must be understood in the same sense as that used in common conversation, where no technical words are in question.

But, if the court are to suppose the contract was in writing, we then ask, where is the consideration for the prom-

ise ? That should have been shown in pleading. (*Rob. on Frauds*, 207, 8, *ch.* 3, *pt.* 6.)

*Curia, per* WOODWORTH, J. The ground of complaint is, that the defendant fraudulently and deceitfully represented and held out to the plaintiffs, that the defendant was willing to, and would endorse the note of *Castro & Henriques*, in case the plaintiffs should sell and deliver the cotton ; but that in fact he was not willing, and did not intend, nor has he endorsed the note, whereby the plaintiffs are injured. The second count alleges that *Castro & Henriques* were, at the time of the purchase, in bad credit, which the defendant knew ; that intending to defraud the plaintiffs, and enable *Castro & Henriques* to obtain possession of the cotton, he represented, that if the plaintiffs would sell and deliver, he would become answerable by endorsing for the purchasers ; that the plaintiffs did sell and deliver the cotton ; that the defendant did not intend, nor has he made himself answerable, or paid ; nor has any other person paid and satisfied the plaintiffs, whereby they were deceived, and have sustained damage.

The declaration is bad in substance ; because it does not aver that *Castro & Henriques* ever made a note, which the defendant was required to endorse. The security to be given was the defendant's endorsement. The unwillingness to endorse refers to the time the assurance was made. If, however, it continued, it does not prove the essential fact, that he actually refused when required. As to the allegation that he never has endorsed ; *non constat* that a note was ever presented for that purpose.

But as a decision upon this point alone, would be merely a postponement of the important question arising in this cause, I will consider that also.

The attempt here is, to sustain the action, not on a contract, which, if in writing, might perhaps be obligatory ; but on a deceitful representation. If the promise was in writing, I perceive no objection to its validity, inasmuch as a good consideration is stated, viz. that if the plaintiffs would sell and deliver, the defendant would endorse. If,

UTICA,
Aug. 1826.

Gallager
v.
Brunel.

then, there is a binding contract existing between the parties, and on which the defendant is liable, I apprehend it is not competent for the plaintiffs to say they have an election to turn this into an action for deceit, and recover in that form, unless the case is such as to render the party liable, not only on the contract; but, in addition, contains facts sufficient to sustain an action for deceit. For example, suppose *A* represents *B* to be solvent, knowing it to be false, whereby *B* obtains credit; but notwithstanding this representation, the seller takes from *A* his written stipulation to guaranty the payment. In this case, I perceive no objection to a creditor's election of the remedy. The fraudulent representation of solvency would sustain the action for deceit. The written guaranty would support an action on the contract. It seems, therefore, immaterial here, whether the plaintiffs have or have not a demand which may be enforced in a different form. The question is, will the facts stated sustain an action for deceit?

After attentive consideration, I am inclined to think the plaintiffs are not entitled to recover. However reprehensible the conduct of the defendant may appear in a moral point of view, we cannot deny to him the protection of the common law; which does not reach cases of imperfect obligation. If this be an attempt on the part of the plaintiffs, to get rid of the statute of frauds, I can only say, the occasion justified the experiment, and calls for a patient and critical examination.

If this case is stripped of the general allegations in the declaration, of fraud and deceit, it appears to me that the gravamen is nothing more, than that the defendant encouraged the plaintiffs to sell to *Castro* and *Henriques*; and, as surety, promised to endorse their notes. The intention of the party not to fulfil, has not, I believe, ever been considered among the fraudulent acts, which, in judgment of law, render a party liable. The maker of a promissory note may not, at the time, intend to make payment. On this note, the plaintiff may declare that the defendant intended to deceive and defraud; but it is mere matter of form, sanctioned by precedent in pleading. The maker·

may go farther, and on the strength of assurances to pay punctually, never intended to be performed, induce the lender to part with his money, and accept the borrower's note. All this is immoral. Still the remedy is on the contract. The law has not recognized it as the substantive ground of fraud. That no cases are to be met with in the books going the length contended for, is good evidence that the doctrine is novel, and has never been acted upon.

The general ground of liability seems to rest on the affirmation of a fact as true, which, at the time, is known to be false ; and by means whereof, credit is obtained. The seller, in most cases, has not the means of ascertaining the truth at the moment. He must repose on the representation, or refuse the credit. Not so here. There was no necessity of relying on the defendant's representations, or his promise. Caution required the plaintiffs to pursue a different course ; to insist that the note be drawn and endorsed *pari passu* with the delivery of the goods. By dispensing with this, they omitted that prudence and care which the law presumes every man will exercise in conducting his affairs. If the plaintiffs suffer, it is owing to their negligence and misplaced confidence ; for which, the law has not provided a remedy.

The general principles which govern this species of action, were ably examined in *Pasley* v. *Freeman*, (3 *T. R.* 51.) In that case, the defendant encouraged the plaintiff to sell goods ; and fraudulently affirmed that the purchaser was a person safely to be trusted. The gravamen was the false affirmation of an existing fact ; not a promise to do a future act, at the time not intended to be performed ; and which, notwithstanding the intent, might or might not be performed. *Buller*, J. observed, "the foundation of the action is fraud and deceit in the defendant, and damage to the plaintiffs. Every deceit comprehends a lie ; but a deceit is more than a lie, on account of the view with which it is practiced, its being coupled with some dealing, and the injury which it is calculated to occasion to another person." It is evident what must be the spe-

UTICA,
Aug 1826.

Gallager
v.
Brunel.

cies of fraud, for which the law gives redress; falsehood as to an existing fact. If, as *Buller*, J. observes, every deceit includes a lie, it follows, that the representation, and promise of the defendant are not comprised within the legal acceptation of that term. The test of a lie is, that the fact asserted is not true at the time; which cannot be predicated of the facts in this case; for, although the defendant promised with the intent not to perform, it was not then false, nor could it be. It referred to an act to be done *in futuro*. Until the defendant had refused to endorse, it could not be said he had violated his promise.

The case of *Thompson* v. *Bond*, (1 *Campb.* 4,) was this: the plaintiff attempted to recover in assumpsit, for services rendered to a third person. It was not denied that the defendant had solicited the plaintiff; and promised to see him paid; but it was a collateral undertaking, and not in writing. It was held, that the action could not be sustained on this ground. But, as the defendant had made a representation to the plaintiff, that he had authority from Mr. *Sheridan's* committee, which turned out to be false, Lord *Ellenborugh* observed that an action might be brought for the deceitful representation. This remark proceeded on the same ground as *Pasley* v. *Freeman*; that there was a false representation of a fact.

The case of *Eyre* v. *Dunsford*, (1 *East*, 318,) cited by the plaintiffs' counsel, was decided on the same ground. There was a material suppression of the truth; for which the defendant was held liable. The case of *Haycraft* v. *Creasy*, (2 *East*, 92,) turned on the ground that the representation was made *bona fide*, and with the belief of its truth. It has no bearing on this cause. In *Clifford* v. *Brooke*, (13 *Ves.* 131,) the lord chancellor puts the right to recover for a deceit, expressly on the falsehood of the fact alleged. He observes, "there must be knowledge at the time. That is the sound principle; that the defendant knowing the person to be dishonest, insolvent and unworthy of trust, made the representation; and *that is the subject of an action, or of a bill in equity*." In the case of *Upton* v. *Vail*, (6 *John.* 181,) there was also a

recommendation of a person, as good, when the defendant knew he was insolvent. The doctrine of *Pasley* v. *Freeman* was approved, without a suggestion that the action could be maintained, when there was not knowledge of the falsehood at the time. The cases in 13 *John.* 224, 325, 395, hold the same doctrine.

I am of opinion that the defendant is entitled to judgment.

Judgment for the defendant.