DANIEL McNAUGHTON, Plaintiff, *vs.* JONAS and
NOAH CONKLING.

ERROR TO CIRCUIT COURT, ROCK COUNTY.

Heard October 4.]                    [Decided October 11, 1859.

*Frauds—Deceits—Guaranty—Credit, Letter of.*

In an action for alleged false and fraudulent representations made by the defendant in a letter of credit, as to the pecuniary responsibility of K. & Co., by which the plaintiffs were induced to trust them : Held that it was error in the circuit court to refuse to instruct the jury ; " that if they believe from the evidence that the plaintiffs sold their goods to K. & Co., on the

McNaughton vs. Conkling.

strength of the defendants' responsibility, and his guaranty to pay, and not upon the responsibility of K. & Co., or upon their confidence in the responsibility of K. & Co., founded upon the defendants' letter. or statement, that then and in that case the plaintiffs cannot recover; and the jury must find for the defendant."

In order to recover in an action for false representations or deceit, it is necessary for the plaintiff to show false and fraudulent representations or concealment, upon which he relied and acted, and by which he was consequently damaged.

A letter of credit containing the words, "I will guaranty that K. & Co. will pay for any amount of goods they may purchase in New York this fall, not exceeding $5,000," was held to be a guaranty to pay if K. & Co. did not pay.

A letter addressed to P. & Co. stating that K. & Co. are strangers, &c., and asking P. & Co. to give them advice and assistance, &c., is a letter of credit intended to be used by K. & Co., generally, in buying goods; and will hold the writer as guarantor for goods bought of any person to the amount stated in the letter.

This action was brought by the defendants in error against the plaintiff in error, to recover the value of certain goods sold by the plaintiffs below to King & Kellogg. The declaration contained four counts, and charged substantially that McNaughton, for the purpose of enabling King & Kellogg, merchants, residing at the city of Janesville, in the state of Wisconsin, to purchase goods and merchandise of Conkling & Co., in the city of New York, made certain false and fraudulent representations to them, as to the credit, property and pecuniary responsibility of King & Kellogg, and fraudulently suppressing the fact that King & Kellogg were indebted to him, McNaughton, to the end that the goods so purchased by King & Kellogg might be applied in payment of their indebtedness to him; that Conkling & Co. relying on these representations, and being ignorant of the fact that King & Kellogg were indebted to McNaughton, gave them credit for goods to the amount of between two and three thousand dollars, which goods were never paid for, whereby the plaintiff suffered damages, and was defrauded.

The defendant below pleaded the general issue, and the cause was tried in November, 1856. The jury rendered a verdict for the plaintiffs to the full amount of their claim. The defendant moved for a new trial on the grounds of error and newly discovered evidence. The court overruled the

motion and judgment was entered for the plaintiffs in the sum of $3,854 92. To reverse this judgment for errors committed by the court below at the trial, as well as in overruling the motion for a new trial, this writ is brought.

There were several points made upon the trial of the case which it is not necessary to notice, except what arose upon the following letter:

" MIDDLEBURY, 21st Sept., 1848.

" GENTLEMEN—I introduce to you the bearer of this, Mr. L. M. Kellogg, of Janesville, partner in business of Mr. J. B. King, and of the firm of King & Kellogg. Mr. Kellogg being a stranger in the city, any advice and assistance he may need and you may think proper to give him will be thankfully received. The season since the receipt of the spring goods having been very short and money somewhat scarce, they have not been able to collect means enough by $100 to $200 to pay their present liabilities in New York, but will do so in a very short time. Mr. Kellogg wishes to purchase from $3,000 to $4,000 worth of goods, which if he does, it must be entirely on time. The means under the control of King & Kellogg give them ample ability (unless those means should be lost or destroyed,) to pay the above or a larger sum. The property in their possession is about 10,000, of which I have paid in over $8,000 in money. I will guaranty that King & Kellogg will pay for any amount of goods they may purchase in New York this fall not exceeding five thousand dollars, with the understanding that said goods shall be kept fully insured *in transitu.*

" Very respectfully yours,

" To Messrs. Kent, Poag & Co., }          D. McNAUGHTON.
  "City of New York." }

From Middlebury, Ohio, Mr. Kellogg went to New York with the letter of introduction to Kent, Poag & Co., and there presented it to them. Kellogg applied to Jonas Conkling & Co., the defendants in error, to purchase goods; referred them to Kent, Poag & Co. McNaughton's letter was exhibited by Kent, Poag & Co., to Conkling & Co., and on the strength of it they sold goods to King & Kellogg on credit.

September 16th, 1851, they recovered judgment against King & Kellogg for that debt, to the sum of $2,960 23 damages and costs; execution was issued thereon and returned unsatisfied in whole, before the commencement of this suit.

King & Kellogg, while in New York, in the fall of 1848, purchased from different houses, goods to the amount of seven or eight thousand dollars.

The trial was by a jury, and upon the trial the defendant asked for twelve separate instructions. The seventh only is noticed by the court, as necessary to the decision of the cause.

" 7.   If the jury believe from the evidence that the plaintiffs sold their goods to King & Kellogg on the strength of the defendant's responsibility and his guaranty to pay, and not upon the responsibility of King & Kellogg, or upon their confidence in the responsibility of King & Kellogg, founded upon the defendant's letter or statements, that then and in that case the plaintiffs cannot recover, and the jury should find for the defendant;" which instruction was refused by the court.

*D. Noggle and C. C. Williams,* for the plaintiff in error.

*J. A. Sleeper,* for the defendant in error.

*By the Court,* PAINE, J.   Without deciding upon the correctness of the numerous other instructions asked by the defendant below, and refused by the court, we think the judgment must be reversed for the refusal to give the seventh. The action is brought to recover for alleged false and fraudulent representations made by the defendant, as to the pecuniary responsibility of King & Kellogg, by which the plaintiffs were induced to trust them and lost their d▋    The representations relied on are contained in the let▋    the defendant, of the date of September 21st, 1848, a▋    sed to Kent, Poag & Co.   It is very obvious that this l▋    of a double character; first, as containing representatio▋    ct, and next, as an agreement of guaranty.   The action▋    ght for fraud and deceit, in making the representations▋

The substance of the seventh instruct▋    ed by the defendant is, that if the plaintiffs sold th▋    without any reliance upon these representations, bu▋    ntirely on the guaranty contained in the letter, then▋    ould find for

the defendant. The court refused this instruction, but we think it should have been given. · In order to maintain the action it was necessary for the plaintiffs to show false and fraudulent representations or concealment upon which they had relied and acted, and by which they had consequently been damaged. If therefore they had not relied at all on the representations contained in the defendant's letter, then they were not damaged by them, and this essential element of the plaintiffs' action failed. If they relied entirely on the guar-' anty then they were not damaged by the representations whether true or false, and have no right to maintain an action for a damage which they never sustained.

The counsel for the defendant in error raised the question whether the words in this letter amounted to a guaranty, or only to a mere offer to enter into a contract of guaranty by some subsequent proceeding like the case of *Stafford vs. Law,* 16 John., 67, and other similar cases cited. But we have no doubt that the words of the letter amount to, and were designed as a present undertaking of guaranty, needing only to to be acted on by any one for whom they were intended, with notice to the writer, in order to bind him. It is true, the future tense is used. The letter says: "I will guaranty," &c. But this form frequently used in instruments which are intended as present agreements, without any thing further being necessary bind the party using it. Thus, one man sends an order another to let a third have goods, and writes, "I will guara that he will pay for them." This clearly is a good guara and obviously so intended. ·The future tense is proba opted from the fact that the performance of the undert to be at some future time, and not with the design that ing should afterwards be done in order to complete the king itself.

There are u cases where it appears from the contract, that the not intended as a present guaranty,

but only a conditional offer to enter into a guaranty. Such was the case in 16 John. before cited. But in each case the question turns, not on the mere use of the present or future tense, but on whether the letter indicates an intent to be thereby bound, or that something further should be done on the part of the writer before the obligation should attach. And we think this letter clearly falls within the first class.

The counsel for the defendant in error also raised the question whether the plaintiffs could have maintained any action on the guaranty, inasmuch as the letter was addressed to Kent, Poag & Co., and to no one else. But we think the case of *Lowry et al. vs. Adams*, 22 Verm., 160, lays down the true rule upon this question. That case held that where the defendant gave to a third party a general letter of credit not addressed to any one, but guaranteeing the payment of whatever goods he might purchase in New York, the plaintiffs having sold goods on the strength of the letter, could recover, although other parties had previously sold on the same letter. This was on the ground that the letter was evidently designed to enable the one to whom it was given to purchase from various dealers, and was equivalent to a separate letter to each, and that the real intent of the party should be carried out. That case, so far as this point is concerned, was very similar to this. The only distinction is, that there the letter was not addressed to any one while here; it was addressed to Kent, Poag & Co. But notwithstanding this, we think it discloses the same intent that the other did; that is, that the party to whom it was delivered should use it for the purpose of purchasing from various dealers in the city of New York. The letter introduces the bearer to Kent, Poag & Co.; it informs them that he is a stranger, and desires to purchase three or four thousand dollars worth of goods, and requests them to furnish him advice and assistance. This evidently contemplates that Kellogg might desire to deal with other parties be-

McNaughton vs. Conkling.

sides them, and indicates a desire to facilitate that object. And then when it comes to the guaranty the writer does not offer to guaranty to Kent, Poag & Co. the payment for any goods that Kellogg might purchase of them, but states to them that he will guaranty the payment of any that he might purchase in *New York* at any time that fall, not exceeding $5,000. The only fair construction of this letter is, that it was designed to enable Kellogg to purchase goods of various dealers in New York; that it was intended that Kent, Poag & Co. should use it for Kellogg's benefit in accomplishing that end; and that the representations and the guaranty in it were intended for any dealer with whom it might be used for that purpose, and who might sell goods on it. It comes fully within the principle of *Lawrason vs. Mason*, 3 Cranch, 492, and the authorities cited, 2 Am. Leading Cases, 230 *et seq.*

We have no doubt therefore that if the plaintiffs parted with their goods on the strength of the representations, and these were false and fraudulent, they could maintain this action for the deceit. Or if they sold on the guaranty entirely, they could have maintained their action on that, if they gave proper notice. So that even admitting that if the plaintiffs below never could have maintained an action on the guaranty, it would render any clearer their right to maintain the action for the falseness of the representations, which does not seem very obvious, unless they relied and acted on the representations; yet we do not think any such aid can be derived in this case, for the reason that they might have held the defendant on the guaranty; and if they neglected to give proper notice, that neglect certainly cannot place them in any better position, so far as this action is concerned, than they would otherwise have held.

But the counsel for the defendants in error further contended that the seventh instruction should not have been given, for the reason that they had a right to elect which action they

McNaughton vs. Conkling.

would bring, and might sue either for the fraud or on the guaranty, and to sustain this position he relied on *Gallager et al. vs. Burnell,* 6 Cow., 346. The reasoning of the court there goes only to this extent, that where there are false representations and a guaranty, both of which are relied on by the seller, then he may elect to sue either for the fraud or on the contract. This may well be; but it by no means follows that in such a case, if the seller relied entirely on the contract and not at all on the representation, he could still elect. And it seems clear that he could not. No man can be allowed to elect to have an action for damages for something by which he was never damaged. The election can be allowed only where the party has relied both on the representations and on the contract. In that case the remarks of Sir James Mansfield, quoted by counsel, must be appropriate. That is, "it would be impossible to say how much mischief had been done by the misrepresentations, and how much by the promise." But on the theory that the seller relies entirely on the promise, then it is very certain that the misrepresentations did no mischief, because not at all relied on. And to allow a party in such case to elect to maintain an action for the falseness of the representation, would be to allow him to elect into existence a cause of action which did not exist before. This position is sustained by the case of *Douglass et al. vs. Reynolds et al.,* 7 Peters, 113, cited by the counsel for the defendant in error. The court there says: "Nothing can be clearer upon principle than that if a letter of credit is given, but in fact no advances are made on the faith of it, the party is not entitled to recover for any debts due to him from the debtor in whose favor it was given, which have been incurred subsequently to the guaranty and without reference to it." The proposition would be equally true when applied to an action for false representations, on which the plaintiff had placed no reliance. . This right of election therefore where the seller has

relied on both the representations and the promise, does not justify the refusal of the seventh instruction, because that assumes that no reliance at all was placed on the representations, and it should have been as asked.

In speaking of the representations as false, we do so of course, only assuming them to be so, for the purpose of disposing of the question of law arising on this instruction, and not intimating at all, that in our opinion the evidence showed them to be really false. That with the other questions of fact, will be for the jury to determine.

The judgment must be reversed, and a new trial awarded.