_MIAMI COUNTY NATIONAL BANK, Respondent, vs. GOLD-
BERG, Appellant.

*September 27—October 15, 1907.*

*Statute of frauds: Guaranty of payment: Expressing the considera-
tion: Sufficiency: Acceptance: Notice: Cause of action.*

1. A letter requesting a bank to "let" defendant's son, "manager for
   the G. L. S. Co., make overdrafts" on the bank "to the amount
   of $800 to buy live stock with," sufficiently expresses the con-
   sideration to satisfy the calls of subd. 2, sec. 2307, Stats. (1898).
2. In such case the undertaking of defendant was *held* to be predi-
   cated upon and collateral to the liability to be incurred by sub-
   sequent advances to be made by the plaintiff, and to guarantee
   their repayment.
3. An undertaking of guaranty is primarily an offer and does not
   become a binding obligation until it is accepted and notice of

the acceptance given to the guarantor. Such acceptance is not shown by mere performance of acts in reliance upon the offer.

4. An action on a contract of guaranty cannot be maintained where the giving of notice of acceptance is denied in the answer, was not found by the court, and there was no evidence that the notice was ever given.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This action was commenced March 5, 1897, to recover $380.83 overdrafts made by the Goldberg Live Stock Company, L. D. Goldberg as manager, between April 13, 1896, and June 1, 1896, and interest thereon from said last-named date, and the complaint seeks to hold the appellant, *Matilda Goldberg,* liable therefor by reason, as alleged, that March 10, 1896, she authorized the plaintiff in writing to let said L. D. Goldberg make overdrafts on the plaintiff's bank on her account under the name of the Goldberg Live Stock Company to the amount of $800. *Matilda Goldberg* had refused to pay any part thereof. Said defendant answered and admitted that she delivered to the plaintiff a contract of guaranty in writing dated March 10, 1896, and therein authorized the plaintiff to let her son, L. D. Goldberg, make overdrafts on said bank not to exceed $800, but alleged that the same was without consideration and that there was no acceptance thereof by the plaintiff nor notice thereof to the defendant, and no notice to her of any alleged advances made under such contract, and the defendant alleges and insists that said contract was and is wholly void; that at the time of the delivery of said contract of guaranty to the plaintiff the account of said L. D. Goldberg at said bank was overdrawn in the sum of $500, and alleges that neither L. D. Goldberg nor said company was indebted to the plaintiff at the time of the commencement of this action, and that if they were the same had been fully paid and discharged prior to the commencement of this action.

A jury trial having been waived, the cause was tried by the court, and after the close of the trial the court found as matters of fact, in effect, that the plaintiff now is, and ever since January 1, 1896, has been, a banking corporation located at Paola, Kansas; that the said company was doing business in Kansas buying live stock on and for a long time prior to March 10, 1896, and continued such business up to and including June 1, 1896; that the said L. D. Goldberg was, during all of said times, the agent and manager of said company, and did business with the plaintiff at such bank; that prior to March 10, 1896, the plaintiff advanced moneys to that company for the purchase of live stock and carrying on its business, taking as security therefor bills of lading of each shipment with a draft on the consignee attached in favor of the plaintiff; that shortly prior to March 10, 1896, the plaintiff refused to extend further credit by way of such advancements; that March 10, 1896, the defendant wrote to the plaintiff a letter, which was received by the plaintiff March 13, 1896, of which the following is a copy:

"Marion, Wis., March 10, 1896.
*"Miami County National Bank,* Paola, Kansas:

"Gentlemen: You kindly let L. D. Goldberg, my son, manager for the Goldberg Live Stock Company, make overdrafts in your bank to the amount of $800 to buy live stock with. He has no doubt explained to you that he has always to wait for returns on stock which is all right. Hope you will accommodate him and also me. I remain,

"Respectfully yours,
"MATILDA GOLDBERG, Prop.
"L. B. GOLDBERG, Manager."

That upon the receipt of that letter and relying thereon, and from time to time as requested by said agent and manager of said company, the plaintiff permitted said agent and company to make overdrafts on account of said company at said bank and paid out and advanced to that company in such overdrafts from time to time various sums of money

to be used in said business in the purchase of live stock, and that at the time of the commencement of this action there was due and unpaid to the plaintiff from the defendant on account of such overdrafts and advancements $380.83, which the defendant refused to pay, though duly demanded.

As conclusions of law the court found, in effect, that the plaintiff was entitled to recover from the defendant $380.83, with interest thereon from June 1, 1896, and costs. From the judgment entered thereon for the amount stated, with interest and costs, the defendant appeals.

The cause was submitted for the appellant on the brief of *Kreutzer, Bird & Rosenberry.*

*J. Elmer Lehr,* for the respondent.

CASSODAY, C. J. It was found by the court and is undisputed that the amount of money which the plaintiff is here seeking to recover is for and on account of overdrafts and advancements made by the plaintiff to the Goldberg Live Stock Company, of which the defendant's son was the agent and manager. The only ground for claiming a right to recover from the defendant is her letter to the plaintiff under date of March 10, 1896, set forth in full in the foregoing statement. The request of the defendant therein contained for the plaintiff to "let" her son, "manager for the Goldberg Live Stock Company, make overdrafts" in the plaintiff "bank to the amount of $800 to buy live stock with," seems to be a sufficient expression of the consideration to satisfy the statute. Subd. 2, sec. 2307, Stats. (1898) ; *Eastman v. Bennett,* 6 Wis. 232, 241, 242 ; *Williams v. Ketchum,* 19 Wis. 231 ; *Dahlman v. Hammel,* 45 Wis. 466 ; *Young v. Brown,* 53 Wis. 333, 10 N. W. 394 ; *Waldheim v. Miller,* 97 Wis. 300, 72 N. W. 869. The request so contained in the defendant's letter was for the plaintiff to allow the defendant's son, as manager of the Goldberg Live Stock Company, to make overdrafts to the amount stated, with a hope that the plaintiff

would accommodate the son by so doing. The undertaking on the part of the defendant was predicated upon subsequent advances to be made by the plaintiff. Such advances on such overdrafts were to be made by the plaintiff to the Goldberg Live Stock Company, or to the son as its manager. In other words, the letter, by implication, guaranteed the repayment of the advances so to be made to the stock company or to its manager to the amount stated. The undertaking of the defendant was collateral to the liability to be incurred by the stock company. Such being the undertaking on the part of the defendant, the question recurs as to her liability in this action. In an early case in this court it was held:

"A letter of credit containing the words, 'I will guarantee that K. & Co. will pay for any amount of goods they may purchase in New York this fall, not exceeding. $5,000,' was held to be a guaranty to pay if K. & Co. did not pay." *McNaughton v. Conklings,* 9 Wis. 316, 320.

It is there said by the court:

"The words of the letter amount to, and were designed as, a present undertaking of guaranty, needing only to be acted on by any one for whom they were intended, with notice to the writer, in order to bind him." Id.

That decision was based upon a case in the supreme court of the United States wherein it was held, among other things:

"A party giving a letter of guaranty has a right to know whether it is accepted, and whether the person to whom it is addressed means to give credit on the footing of it or not. . . . A demand of payment of the sum advanced under the guaranty should be made of the person to whom the same was made, and in case of nonpayment by him notice of such demand and nonpayment should have been given in a reasonable time to the guarantors; otherwise they would be discharged from the guaranty." *Douglass v. Reynolds,* 7 Pet. 113.

To the same effect, *Davis S. M. Co. v. Richards,* 115 U. S. 524, 6 Sup. Ct. 173. Such rulings are in harmony with

well-considered adjudications in other jurisdictions.   Thus, it has been held in a recent case in Pennsylvania:

"A guarantor of future credit or advancing is entitled to notice from the party giving the credit of his acceptance of the guaranty, inasmuch as such notice enables the guarantor to know the nature and extent of his liability, to exercise due diligence in guarding himself against losses which might otherwise be unknown to him, and to avail himself of the appropriate means in law and equity to compel the other parties to discharge him from future responsibility. . . . The corporation accepted and filled the order, but gave no notice of the acceptance to the guarantor.   *Held,* that the guarantor was not liable."   *Acme Mfg. Co. v. Reed,* 197 Pa. St. 359, 47 Atl. 205.

To the same effect: *King v. Batterson,* 13 R. I. 117; *De Cremer v. Anderson,* 113 Mich. 578, 71 N. W. 1090; *Pearsell Mfg. Co. v. Jeffreys,* 183 Mo. 386, 81 S. W. 901; *Winnebago P. Mills v. Travis,* 56 Minn. 480, 58 N. W. 36; 1 Brandt, Suretyship & G. (3d ed.) § 205; 20 Cyc. 1404.   In this last work it is said:

"An undertaking of guaranty is primarily an offer, and does not become a binding obligation until it is accepted and notice of the acceptance given to the guarantor.   Such acceptance is not shown by the mere performance of acts in reliance upon the offer."

The giving of such notice is denied in the answer and is not found by the court, and there is no evidence that such notice was ever given.   It follows that the action cannot be maintained.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the action.