ESTATE OF MINGESZ: WORTLEY (personal representative), Appellant, v. KIEFFER (claimant), Respondent.

*No. 149 (1974). Submitted October 30, 1975.—Decided November 25, 1975.*
(Also reported in 235 N. W. 2d 296.)

For the appellant the cause was submitted on the briefs of *Leslie A. Wortley* of West Allis.

For the respondent the cause was submitted on the brief of *Thomas M. Schaus* of Milwaukee.

DAY, J. The questions raised on the appeal are first, whether the court after the hearing in an estate claim, having given a decision from the bench, properly reopened the matter for the taking of further testimony; and second, whether the testimony adduced was sufficient to establish a guaranty contract for the payment of a promissory note.

Under date of September 22, 1964, Charles Ranieri signed a document entitled "Chattel Mortgage" promising Judith Kieffer, who had loaned him $8,000 for purposes of investment in his business, to repay her on or before September 22, 1969, with interest on the outstanding principal to be paid semiannually at an annual rate of six percent. In addition, Mr. Ranieri promised to pay Ms. Kieffer five percent of the "net profits" of the business, as defined in the instrument. The instrument was drafted by Attorney Eugene Kershek at the direction of his client, Mr. Ranieri. In June of 1965, at Mr. Ranieri's direction, Attorney Eugene Kershek drafted and appended at the bottom of the "Chattel Mortgage" the following statement which was signed by Richard Mingesz:

"For value received, I, the undersigned, guarantee the payment of the above described note in full and if after the maturity of this note the maker does not pay the full principal and interest then due and owing thereon, the undersigned will, on demand of the holder hereof, pay the holder any and all sums then due and owing.

/s/ Richard Mingesz
Richard Mingesz"

Attorney Kershek personally witnessed the signing of the guaranty clause by Mr. Mingesz. He was also certain that no money consideration for the guaranty had been given on the date in June, 1965, when Mr. Mingesz signed the document.

Richard Mingesz died on November 24, 1970, and on December 30, 1970, Ms. Kieffer filed a claim against his

estate for $8,000 plus interest at six percent from June, 1965. Mr. Leslie Wortley, personal representative of the estate, objected to the claim, and on November 8, 1971, the first hearing on the claim was held. The only witness present at that time was Judith Kieffer, who related that the guaranty clause had been drafted by Attorney Kershek whom she described as her attorney, and that it represented additional security for her. She stated that she had received payments "from time to time" from Mr. Ranieri, but it was not specified whether they were interest, principal, or net profits. She testified that as of November 8, 1971, the amount due on the document was $8,000 plus interest "over a period of five years."

Ms. Kieffer's attorney, Mr. Thomas M. Schaus, had requested Attorney Kershek to appear at this hearing, but had not subpoenaed him in reliance upon Kershek's assurances, as an attorney, that he would be present. Mr. Kershek failed to appear, however. The court refused to delay the proceedings, and denied the claim for lack of proof of the authenticity of Mingesz' signature.

The record indicates that moments after the denial was pronounced from the bench Mr. Kershek appeared, and Attorney Schaus moved to reopen the proceedings in the interest of justice. The motion was denied. There was no written order filed either denying the claim or denying the motion to reopen the proceedings. On December 27, 1971, and again on January 31, 1972, Mr. Schaus filed written motions to reopen the proceedings. At a proceeding held on May 15, 1972, the court granted the motion.

On January 3, 1973, a second evidentiary hearing was held, at which Attorney Kershek testified regarding his knowledge of the transaction. The court later entered its decision finding that Mr. Mingesz was a guarantor and that the claim of Ms. Kieffer should be allowed in the amount of $8,000 plus interest from July 1, 1965, in the amount of six percent per annum. Judgment was entered in conformity thereto on April 9, 1974. It is from this

judgment that the personal representative has appealed.

The first question raised on the appeal is whether the trial court either erred or abused its discretion in reopening the proceeding for the taking of the testimony of Attorney Kershek. Both parties rely on sec. 269.46 (1), Stats.[1] However, the record shows that the trial court could have considered the motion to reopen under the standards of sec. 269.46 (3).[2] Ms. Kieffer obviously moved before sixty days after the service of notice of entry of judgment, since there was never any judgment entered against her. Under sec. 269.46 (1), Ms. Kieffer would have to demonstrate that the failure to subpoena Attorney Kershek was "excusable neglect." It may well have been such, considering Kershek's agreement to appear, but we need not rule on that question at this time, since under sec. 269.46 (3) no "excusable neglect" is required to justify reopening of the proceedings. This court recently discussed this difference in standards between subs. (1) and (3) of sec. 269.46:

"In deciding whether to grant a motion to reverse a judgment [under sec. 269.46 (3)], a trial court could certainly consider the question of the moving party's neglect, and possible prejudice to the other side, but such matters should rest within the sound discretion of the court, and should not be considered absolute prerequisites as in the

[1] "269.46 **Relief from judgments, orders and stipulations; review of judgments and orders.** (1) The court may, upon notice and just terms, at any time within one year after notice thereof, relieve a party from a judgment, order, stipulation or other proceeding against him obtained, through his mistake, inadvertence, surprise or excusable neglect and may supply an ommission in any proceeding. In addition to the required affidavits, all motions to vacate a judgment entered upon default or cognovit and to obtain a trial upon the merits shall be accompanied by a proposed verified answer disclosing a defense."

[2] 269.46 (3) "All judgments and court orders may be reviewed by the court at any time within 60 days from service of notice of entry thereof, but not later than 60 days after the end of the term of entry thereof."

case of motions for new trials. This conclusion is supported by comparing sec. 269.46 (3), Stats., with sec. 269.46 (1). Sec. 269.46 (1) allows a trial court to relieve a party from a judgment, within one year of notice of its being rendered, upon a showing of 'mistake, inadvertence, surprise or excusable neglect.' If a party acts quickly however, within sixty days of the notice of judgment, then sub. (3) is applicable. The fact that sub. (3) contains no requirement of showing excusable neglect, etc., as required under sub. (1), is evidence that the legislature intended that excusable neglect is not an absolute prerequisite to relief under sub. (3)." *Kochel v. Hartford Accident & Indemnity Co.* (1975), 66 Wis. 2d 405, 418, 419, 225 N. W. 2d 604.

Under the circumstances of this case, the trial court did not abuse the broad discretion accorded it under sec. 269.46 (3).

The estate also claims that there is no proof that there was any consideration for the guaranty given by the decedent. The words "for value received" used in the guaranty satisfy the requirement of the statute of frauds, sec. 241.02 (2).[3] This phrase also raised a rebuttable presumption that consideration for the guaranty had in fact been given. However, cases cited to us by counsel for Ms. Kieffer in support of such a presumption are not in point, since all refer to contracts of guaranty made simultaneously with the principal obligation. *See, e.g., Jacobi v. Cielinski* (1952), 262 Wis. 100, 103, 53 N. W. 2d 718. We have found only one case in which a guaranty

---

[3] "241.02 **Agreements, what must be written.** In the following case every agreement shall be void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith:

"(1) Every agreement that by its terms is not to be performed within one year from the making thereof.

"(2) Every special promise to answer for the debt, default or miscarriage of another person.

"(3) Every agreement, promise or undertaking made upon consideration of marriage, except mutual promises to marry."

was given after the execution of the underlying note, *Jansen v. Kuenzie* (1911), 145 Wis. 473, 475, 130 N. W. 450, in which our court said:

"The note upon its face recited that it was given for value received and was in compliance with all the provisions of the statute, which require the agreement to pay the debt of another to be in writing expressing the consideration and signed by the party to be charged. The consideration 'for value received' was recited in this note, and that is a sufficient compliance with the statute as to expressing consideration."

However, the *Jansen Case* also involved proof of actual consideration, because the guaranty was apparently executed in consideration of the noteholder's forbearance from bringing suit against the delinquent promisor. In the present case, there is no evidence that Mr. Ranieri was delinquent at the time that the guaranty was given. The latest authority in Wisconsin for the proposition that the expression of consideration is prima facie evidence is over 100 years old.[4] We nevertheless hold here that the recitation of consideration in the guaranty is sufficient to raise a presumption that consideration exists, as other courts have recognized. *Reece v. Reece* (1965), 239 Md. 649, 212 Atl. 2d 468. The guaranty contract before us was not a negotiable instrument and would require a recitation of consideration to raise the presumption, as was made in this case. *Estate of Linkman* (1926), 191 Wis. 353, 354, 210 N. W. 705.

In an attempt to argue that the presumption of consideration was rebutted by the evidence, the estate relies heavily on the testimony of Mr. Kershek that "no money passed hands on that particular day of the signature" by the decedent. This, of course, is not proof that no consideration passed between the parties at another time. Mr. Kershek also testified that Mr. Ranieri "directed me to draft it [the guaranty clause] in relation to some

---

[4] *Yenner v. Hammond* (1874), 36 Wis. 277, 280, 281.

oral agreements he had with the third party, namely, Mingesz, . . . I only represented Mr. Charles Ranieri in this entire transaction; never represented Judith Kieffer, nor did I represent Richard Mingesz. . . ." Mr. Ranieri never was called to testify with respect to any consideration between him and Mr. Mingesz for the insertion of the clause. We find that the presumption of consideration was not rebutted.

The estate also argues that Ms. Kieffer never gave any notice of acceptance to Mingesz of his guaranty. The law does not require notice of acceptance under the circumstances in this case. The estate relies on the case of *Miami County Nat. Bank v. Goldberg* (1907), 133 Wis. 175, 179, 180, 113 N. W. 391. The case is distinguished from that before us because the guaranty at issue there covered indefinite future advances, not specific previous loans as in the present case. In the *Miami County Case,* the court held that a guarantor of future credit or advances is entitled to notice from the party giving the credit of his acceptance of the guaranty, inasmuch as such notice enables the guarantor to know the nature and extent of his liability, to exercise due diligence in guarding himself against losses which might otherwise be unknown to him, and to avail himself of appropriate means to discharge himself from future responsibility. But in this case Mr. Mingesz knew precisely the nature and extent of his liability for the previous loan. This court has had occasion to refer to such a situation, and suggested that an absolute and direct assumption by the guarantor to pay a pre-existing debt does not require notice of acceptance from the creditor. *International Textbook Co. v. Mabbott* (1915), 159 Wis. 423, 427, 150 N. W. 429. We now hold that notice of acceptance is not required where the guaranty is an unconditional agreement to pay a fixed, previously incurred debt.

The estate also claims that there was no evidence that Mr. Ranieri had in fact defaulted, or that a demand for

payment had been made on Mingesz by Ms. Kieffer. We agree with the trial court that there was evidence of default in the form of Ms. Kieffer's testimony as to the amount owed on the note at the time of the hearing, two years after the note was due. We also agree with the trial court that the filing of the claim with the estate was sufficient notice of the default.

Finally, the estate challenges the judgment as to damages. However, we hold that there was sufficient evidence for the trial court to make its findings that the damages were $8,000 with interest at six percent from July 1, 1965. The instrument in question called for three types of payment: The loan principal, the interest payable semiannually, and five percent of the net profits. Ms. Kieffer's testimony that she did receive some payments from Mr. Ranieri did not specify which of the three they were. She was positive in her testimony, however, that the principal of $8,000 plus interest "over five years" was due, and we therefore cannot say that the decision of the trial court awarding interest from July 1, 1965, was against the great weight and clear preponderance of the evidence. There was no evidence offered by the estate that either the principal or the interest due was any less. We conclude that the judgment of the trial court should be affirmed.

*By the Court.*—Judgment affirmed.