(No. 12942.—Reversed and remanded.)

ROMAN GRONOWSKI *et al.* Appellees, *vs.* LUDWIK JOZEFO-WICZ *et al.* Appellants.

*Opinion filed February 18, 1920.*

1. SPECIFIC PERFORMANCE—*equity will not decree specific performance of alternative agreement.* The mere fact that a certain sum is stipulated as liquidated damages in case of failure to perform a contract will not prevent a court of equity from decreeing specific performance; but where a contract is in the alternative, and a party to it has the right to perform certain acts or pay a sum of money in lieu thereof, equity will not decree specific performance of the first alternative.

2. SAME—*equity will not enforce contract entered into through misapprehension of one of the parties.* Specific performance is an equitable remedy based on the existence of a contract between the parties and will not be granted where any unfairness has been used in obtaining the contract, where it has been entered into through misapprehension of one of the parties or where the proof is conflicting as to its expressing the intention of the parties.

3. SAME—*contract must be proved within a reasonable degree of certainty.* Specific performance is not enforced as a matter of absolute right but in a large measure rests in the discretion of the court, and to entitle a party to specific performance the contract must be clear in its terms and be admitted or proved with a reasonable degree of certainty.

4. CONTRACTS—*what constitutes a written contract.* A written contract is one which is all in writing, so that all its terms and provisions can be ascertained from the instrument itself.

APPEAL from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

ALANSON C. NOBLE, and STANLEY S. WALKOWIAK, for appellants.

BERNHARD STENGE, (EDWARD H. MORRIS, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county for the specific performance of a contract to exchange real estate.

The bill alleged that on April 23, 1917, complainants and defendants, respectively, owned certain described real estate in Chicago and on that day entered into a written agreement for the exchange between each other of their real estate. The contract is set out in the bill. The substance of it is, that defendants agreed to convey their property to complainants by warranty deed for a consideration of $20,250, subject to existing leases, the purchasers to be entitled to rents accruing after delivery of the deed; also subject to general taxes for the year 1916 and unpaid special taxes and assessments, party wall agreements and building line restrictions, and subject also to a first mortgage for $7500, bearing five and one-half per cent interest and maturing in August, 1919. Complainants were to convey their property to defendants by warranty deed for a consideration

of $18,000, subject to existing leases, the purchasers to be entitled to rents accruing after delivery of the deed; also subject to general taxes for 1916, unpaid special taxes and special assessments, party wall agreements, building line restrictions and to a first mortgage for $8000, bearing interest at six per cent, maturing about April 5, 1920, and a second mortgage for $2000, bearing six per cent interest and maturing about April 5, 1918. Complainants were to pay defendants at the date of the delivery of the deeds $1500 in cash and $3250 to be secured by second mortgage on the property taken in exchange, the principal to be paid off at the rate of $300 or any larger sum every six months, balance to be paid in full in August, 1919. Each agreed to furnish the other either a certificate of title issued by the registrar of titles, or a merchantable abstract of title or copy of such abstract brought down to date, or a title guaranty policy made by the Chicago Title and Trust Company, showing good and sufficient title in them, respectively. The parties were to have ten days after receiving abstracts to examine them and notify the opposite parties in writing of any objections to the title if there were any, and if none, to state that the title was satisfactory. Provision was made for clearing up defects. The agreement was left in the custody of the real estate agent who drew it. The bill alleged that on April 30, 1917, complainants by their agent tendered defendants a complete abstract of title, which defendants refused to accept and declared they would not perform the contract; that May 2, 1917, complainants offered to pay defendants $1500 cash, give them a complete abstract and deliver them a warranty deed for the property and execute and deliver to defendants a second mortgage for $3250 according to the agreement, but defendants refused to perform their part of the agreement and declared it was not binding on them. The bill was filed May 3, 1917, and prayed specific performance, and alleged complainants were ready, willing and offered to perform the contract on their part.

Answer under oath was not waived and defendants filed a sworn answer. In their answer they denied entering into the agreement as alleged in the bill. The answer averred that a few days prior to April 23 one Zazackowski called on defendants at their place of business and represented himself to be a solicitor for one Bereczkowski, who was agent for complainants' property, and said they were desirous of exchanging it for defendants' property; that complainants' property was bringing a monthly rental of $130, was equipped with steam heat throughout, with radiators in all the flats and in the store; that the building was in first-class condition, and that, properly managed, it would bring a much larger rent, and the owners would give the defendants a good bargain in exchange. The answer averred the defendants told the solicitor they did not wish to exchange, and a few days later Bereczkowski again called on defendants and made substantially the same proposition and the same representations as to the character and condition of complainants' property, the monthly rental it was bringing, and that, properly managed, it would bring more rent; that it was in a thorough condition of repair and the taxes on it were about $200 per year; that defendants told the agent they did not wish to exchange their property for it but after much persuasion consented to look at complainants' property, whereupon the agent called a taxicab and defendant Ludwik Jozefowicz and his daughter went with him to the property. The agent took them into the building and showed them one flat which was occupied. It was steam heated and in it were radiators. Jozefowicz asked to be shown through the other flats and parts of the building, but the doors were locked and the agent represented they could not get in them because workmen were doing repair work, but that they were equipped with steam heat and finished like the one shown Jozefowicz, and the agent told Jozefowicz he could rely on his word as to the equipment of the building, the rental and the taxes. After returning

to defendants' place the agent told defendants that complainants' premises were incumbered with a first mortgage for $8000 and a second mortgage for $2000, and they placed a value on the premises of $20,000. He inquired the value of defendants' property, and they told him it was worth $23,000 and was incumbered by a mortgage for $7500. The agent said he would see defendants after consulting with the complainants and submit a proposition for exchange. Defendants said they did not want to make any exchange and dismissed the matter from their minds. Afterwards, on April 23, 1917, Bereczkowski and complainants called at defendants' flat and in the absence of defendant Ludwik Jozefowicz entered into negotiations with his wife, Anna. While the negotiations were in progress Jozefowicz returned and all parties entered into a discussion which resulted in the signing of a certain document and promissory notes. The answer avers defendants did not know whether the alleged contract set out in the bill was the document so signed, as it was taken possession of by Bereczkowski and has not since been seen by defendants, but they aver the agreement set out in the bill does not contain the terms and provisions of the agreement entered into by complainants and defendants at the time the document was signed. The answer avers that Bereczkowski prepared certain notes which he said were part of the terms of the agreement; that defendant Anna Jozefowicz objected to signing anything without the presence and advice of their lawyer, and she endeavored by telephone to get into communication with their lawyer but was unable to do so; that Bereczkowski said it was not necessary for them to have a lawyer; that he would make a copy of the agreement for them for their lawyer to pass upon, and if it was not in accordance with what they understood the contract to be, a new one could be made out or the one already made destroyed and the matter ended, to which defendants consented. The answer avers that at the time the

agreement was signed complainants and said agent reiterated their former representations as to the rental value of the property, its condition with reference to being steam heated throughout and that the taxes were $200 per year; that complainants further represented and stated that if any of said conditions were not as represented defendants had the right to have the contract canceled and destroyed, and all of these conditions were to be inserted in the agreement at the time it was signed; that Bereczkowski further represented that either of the parties should have the right to decline to carry out the contract by paying the other party $500, which would end the matter and terminate all right of action either party might have against the other, and at the suggestion of the agent complainants and defendants each signed a promissory note for $500 payable to the other, which notes were prepared by the agent, and it was agreed the terms and conditions of the notes were to be incorporated in the agreement for the exchange. The answer further avers that all conversations were carried on in the Polish language; that defendants did not readily understand English, and especially writing in English; that the contract and notes were in English, were prepared by said agent and explained by him to defendants in Polish; that defendants relied upon his representations; that he stated in Polish the agreement contained the provisions set forth in the answer, and that in the event either party decided not to carry out the contract, upon the payment of $500 to the other party that would end the matter; that thereupon complainants and defendants signed the document, which was taken possession of by Bereczkowski. Defendants also signed a note for $500 and the complainants signed a note for a like sum, which notes were prepared by Bereczkowski and by him delivered to the respective payees. The answer further avers that after said instruments were signed, at Bereczkowski's request defendants gave him an order upon the trustee holding a loan on defendants' prop-

erty, for the abstract to the title, but it was understood the abstract was not to be used or any continuation of it made until defendants had further examined complainants' property and verified the representations made about it and had the contract examined to ascertain if it was in accordance with the agreement of the parties. The answer averred that Bereczkowski furnished the defendants a copy of the agreement set out in the bill, but it does not contain the terms and conditions of the agreement of the parties but is of a wholly different import; that defendants made investigations to verify the representations of complainants concerning their property and found that it was not renting for to exceed $100 per month; that the flats were not supplied with radiators for steam heat nor equipped with steam heating appliances but were stove-heated; that the building could not be made to produce $130 per month if fully occupied; that the premises were not in good repair and the taxes were $317 per year. The answer avers that upon learning these facts defendants notified complainants' agent they would not carry out the agreement and demanded the agreement be delivered up and canceled and the $500 note of defendants held by complainants be canceled and returned, and defendants at the same time offered to return complainants' $500 note, but this was refused, and thereafter said agent demanded that defendants carry out the agreement and pay the complainants the $500 note; that in order to avoid litigation defendants tendered payment of the $500 note, which complainants refused to accept and demanded that defendants carry out the agreement or pay the complainants an additional sum of $1000, which defendants refused to do. The answer avers that if complainants have any cause of action growing out of said transaction they have a complete and adequate remedy at law.

Defendants also filed a cross-bill setting up the greater portion of the matters contained in the answer and prayed that the supposed contract be canceled and set aside as a

cloud upon defendants' title, and that complainants in the original bill be ordered to deliver up the $500 note and that it be declared without consideration and null and void.

The answer to the cross-bill denies the alleged representations as to the rental value of complainants' property, its condition with reference to steam heat and radiators or that the taxes were $200 per year, and alleges defendants visited the premises several times; denies Bereczkowski was the agent of complainants, and denies that there was any such talk between the parties as to the terms and provisions that were to be embodied in the contract as alleged in the cross-bill; denies either party might decline to carry out the contract upon paying the other $500; avers the contract as set out in the original bill contains all the terms and provisions of the agreement between the parties and was correctly read over to the parties before it was signed. The answer further avers the giving of the notes was at the suggestion of defendants after the contract had been signed.

The cause was heard by the court and a decree rendered finding that the contract was a valid and enforceable one and ordering its performance; that it should have been performed prior to May 3, 1917, but that defendants refused to perform it. The decree provided that instead of their paying defendants $1500 cash and giving a second mortgage for $3250, complainants should have the option of turning over for the benefit of defendants the $2000 mortgage, duly released and canceled of record, which should be considered payment of the $1500, and a credit of $500 as of April, 1918, on the $3250 mortgage agreed by complainants to be given to defendants; also that said $3250 be credited with $450 as of November 1, 1917, on account of rent due from defendants to complainants under the contract. The decree declared the two $500 notes to be void.

According to the agreement set out in the bill the equity in defendants' property was valued at $4750 more than the equity in complainants' property, and this difference was

291 — 18

to be paid by complainants paying defendants $1500 cash and giving them a second mortgage on the property complainants were to receive from defendants in the exchange. The decree gives complainants the option of settling that difference by turning over to defendants the $2000 mortgage on complainants' property, canceled and released of record, and crediting $500 on the $3250 which complainants had agreed to secure by second mortgage. This was requiring of defendants something that was not specified in the agreement. They never assumed and agreed to pay the $2000 mortgage on the property they were to receive in exchange from complainants. It might be that defendants considered the $1500 cash and the mortgage for $3250 as all, or more than, the equity in complainants' property was worth, and that it was not their intention to pay off the incumbrance. At all events, they never agreed to pay the mortgage but the decree compels them to do so, which was erroneous.

The only reference in the decree to the two $500 notes is that they are declared void and of no effect. No order is made as to what shall be done with them. The evidence is not very clear as to why the notes were executed. Bereczkowski testified on behalf of complainants that no suggestion was made about the notes until after the contract was signed, and then defendant Ludwik Jozefowicz suggested signing notes. Bereczkowski said it was unnecessary but they could execute notes if they wanted to. Defendants suggested notes for $200, and $500 was finally agreed upon. Nothing was said to the effect that if either of the parties decided to abandon the contract they might do so by paying to the others $500. Complainant Roman Gronowski testified Ludwik Jozefowicz wanted notes executed for $200, and the statement was made they should be for $500; that no mention was made of expenses; that Bereczkowski said they were unnecessary but he would prepare them, and he did so; that no mention was made that

if one backed out he would owe the other $500 and the contract should be destroyed. Mrs. Gronowski testified that Ludwik Jozefowicz wanted the notes made for $200; that her husband suggested making them for $500, but nothing was said about their purpose being to cover expenses. Ludwik Jozefowicz testified in his own behalf that during the negotiations they talked about signing notes for $200, so that in case either one backed out he would have to lose that amount; that Gronowski said he favored notes for $500; that Bereczkowski prepared the notes, explained them in Polish, and said if either backed out he would have to pay the other $500. Anna Jozefowicz substantially corroborated her husband's testimony about the notes and the purpose of executing them, as did also their two daughters, Tillie Tadelski and Stella Jozefowicz.

Although the notes are not referred to in the written agreement, we cannot understand the actions of the parties in giving them, and the proof on that subject, otherwise than that they were a part of the terms of the agreement for the exchange of properties. If it had been stipulated in the written agreement that upon a failure to perform the contract the party refusing to perform should pay $500 as liquidated damages, that provision would not prevent a court of equity from decreeing a specific performance. (*Lyman* v. *Gedney,* 114 Ill. 388.) Defendants contend, however, that the notes were given pursuant to a part of the agreement not expressed in the written instrument,—that each party had the right to decline to consummate the deal and should then be liable to pay the other party $500. Where a contract is in the alternative and a party to it has the right to perform certain acts or pay a sum of money in lieu thereof, equity will not decree specific performance of the first alternative. (*Davis* v. *Isenstein,* 257 Ill. 260; *Barrett* v. *Geisinger,* 179 id. 240.) The parties to this suit are Polish people, who did not speak or readily understand spoken English, and defendants could not read writing in

English. Bereczkowski, who prepared the agreement and notes, spoke and wrote both languages, and while he testified he translated the agreement in Polish and complainants' testified likewise, their version of the terms and provisions of the agreement between the parties is at variance with the testimony on behalf of defendants. There are also other contradictions between the parties as to representations of complainants as to the rental value of their property, the amount of the general taxes on it and defendants being allowed an opportunity to verify their correctness, and which they claimed they found on investigation to be untrue. Jozefowicz testified that when he was unable to get his lawyer there before the instrument was signed, Bereczkowski said that would make no difference; that he could have his lawyer examine it next day, and if everything was not as wanted and all right they could back out. Mrs. Jozefowicz and her daughter Mrs. Tadelski testified Bereczkowski told them to have no fear about signing the papers; that they could have them examined by their lawyer the next day. Leo, a son of defendants, came up-stairs from the saloon where he was tending bar, looked at the agreement and said to his father it would be all right for him to sign. The son was not present while the negotiations were going on. As we understand the evidence he was not present until after the agreement was written, and it is not at all clear that he read it. Most of the testimony was that he just glanced at it. His sister, Tillie Tadelski, testified her brother glanced at the agreement, said he guessed it was all right, and told them to have her husband, who is a lawyer, examine it.

Of course, if there were no question that defendants understood the terms and provisions of the document they signed there would be a strong presumption that the written instrument expressed the whole agreement and intention of the parties. Here, because of defendants' ignorance of the language in which the agreement was written and

the conflicting proof as to its expressing the intention of the parties, we do not think the case one for the enforcement of specific performance. A written contract is one which is all in writing, so that all its terms and provisions can be ascertained from the instrument itself. (*Conductors' Benefit Ass'n* v. *Loomis,* 142 Ill. 560.) Specific performance is an equitable remedy based on the existence of a contract between the parties, (*St. Louis Nat. Stock Yards* v. *Wiggins Ferry Co.* 112 Ill. 384,) and will-not be enforced where any unfairness has been used in obtaining the contract or where it has been entered into through misapprehension of one of the parties. (*Skeen* v. *Patterson,* 180 Ill. 289.) It is not enforced as a matter of absolute right but in a large measure rests in the sound discretion of the court, but where all the necessary elements and conditions are present and performance will do justice between the parties it will be enforced. (*Canal Comrs.* v. *Sanitary District,* 191 Ill. 326; *East St. Louis Railway Co.* v. *City of East St. Louis,* 182 id. 433; *Evans* v. *Gerry,* 174 id. 595.) To entitle a party to specific performance the contract must be clear and certain in its terms and be admitted or proved with a reasonable degree of certainty. (*Carson* v. *Davis,* 171 Ill. 497; *Koch* v. *National Union Building Ass'n,* 137 id. 497.) In our opinion the proof did not make a case authorizing the enforcement of specific performance.

The decree is reversed and the cause remanded to the circuit court, with directions to dismiss the original bill and grant the prayer of the cross-bill; that the agreement be annulled and set aside upon complainants in the cross-bill paying defendants to the cross-bill the amount due on the $500 note given by Jozefowicz to Gronowski and delivering up to Gronowski his note held by Jozefowicz.

*Reversed and remanded, with directions.*