## Louise C. Carr and Frank W. Williams, Appellants, v. Lizzie Butterworth et al., Appellees.

## Gen. No. 6,792.

1. BROKERS, § 36*—*when contract of broker is performed.* Where an owner lists his real estate with a broker for sale, the broker has earned his commission where the broker has procured a prospective purchaser who is able, ready and willing to enter into a contract for purchase on the owner's terms and the owner refuses to enter into such contract.

2. BROKERS, § 38*—*when performance is shown by production of purchaser.* A broker with whom property is listed by the owner earns his commission where he produces a prospective customer whom the owner, without fraud on the broker's part, accepts and with whom the owner enters into a valid, binding, enforceable contract for sale, and it is immaterial whether the contract is carried out or fails to be carried out by reason of the prospective purchaser's default.

3. BROKERS, § 85*—*what evidence as to performance is inadmissible.* The legal effect of a written instrument is a matter to be determined by the court from the instrument itself, and it is not proper to permit a witness, in testifying, to characterize it as an option, over the objection of the adverse party who contends that it is an enforceable contract for sale of the property.

4. VENDOR AND PURCHASER, § 16*—*when contract of sale instead of option is shown.* A writing which is headed "Articles of agreement for warranty deed with forfeit," by the terms of which one of the parties unqualifiedly agrees to pay for certain real estate, and the other agrees to sell and convey to him when the payments are made, which is mutual and by its terms is made binding on the heirs, executors, administrators and assigns of both parties, and which provides for damages for a breach of the contract by either party, different measures of damages being provided for breaches by different parties, is not an option but a contract for sale.

5. VENDOR AND PURCHASER, § 229*—*what contracts may be enforced by court of equity.* That a contract for the sale of land contains a provision for liquidated damages in case of breach is not, alone, ground for the refusal of equity to enforce it.

6. VENDOR AND PURCHASER, § 4*—*what are essentials of sale.* A contract for the sale of real estate is not required to be en-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

forceable in equity to render it a valid, binding, enforceable contract, as it may nevertheless be enforceable at law.

Appeal from the Circuit Court of Winnebago county; the Hon. Robert K. Welsh, Judge, presiding. Heard in this court at the April term, 1920. Reversed and remanded. Opinion filed June 29, 1920.

Garrett, Maynard & Hull, for appellants.

Charles W. Ferguson, Lathrop, Lathrop & Brown and Patrick H. O'Donnell, for appellees.

Mr. Justice Heard delivered the opinion of the court.

This is an action in assumpsit brought by appellants against appellees in the circuit court of Winnebago county for commissions as real estate brokers. A trial before the court without a jury resulted in a judgment for appellees against appellants, from which judgment this appeal is prosecuted.

The undisputed evidence shows that appellants were real estate brokers in Rockford and that appellees, who were the owners of a business property in that city, were desirous of selling the same and listed it with appellants; that appellants found a prospective purchaser in the person of Edward E. Keating; that after negotiations October 11, 1917, Keating drew up duplicate writings with reference to the proposed purchase and signed them; that on that day appellant Carr took these writings together with a check of Keating's for $300 to the appellee Lizzie Butterworth; that after some conversation Lizzie Butterworth in the presence of appellee John Felch signed the writings and accepted the $300 check; that she retained one of the writings and that the other was taken by Carr and given to Keating; that a few days thereafter Keating came to Rockford and procured the signature of appellees Felch and Sheaff to his copy of the said writ-

ing, but that they did not sign the writing retained by appellee Butterworth; that shortly thereafter Keating placed the writing signed by appellees on record in the office of the recorder of deeds of said county; that but one paper was ever signed by Keating and all of appellees; that Keating prior to the trial destroyed the writing signed by himself and appellees; that a copy of the record of said writing certified by the recorder of deeds of said county is as follows:

"Agreement.

"Articles of Agreement, Made this eleventh day of October, A. D. 1917, Between Mrs. Lizzie Butterworth of Rockford, Ills. party of the first part and Edward E. Keating, of Huntley, Ills., party of the second part:

"Witnesseth, That if the party of the second part shall first make the payments, and perform the covenants hereinafter mentioned on his part to be made and performed, the said party of the first part hereby covenants and agrees to convey and assure to the said party of the second part, in fee simple, clear of all incumbrances, as shown by an authentic abstract made by a regular abstractor showing a good merchantable and complete title, and by a good and sufficient Warranty Deed, the following described Real Estate, situated in the County of Winnebago and State of Illinois, to-wit:

"Lot (9) Nine in block (3) Three, West Rockford, Ill., said lot being known as (120) Number One Hundred and Twenty North Main street, Rockford, Ill. Size of said lot being (66) sixty-six feet on North Main street by (156) feet deep, said abstract above mentioned to be furnished by October 20th, 1917, and to be continued to date of delivery of deed; the said party of the second part hereby covenants and agrees to pay to the said party of the first part the sum of Sixty-six Thousand Dollars ($66,000), in the manner following:

"Three Hundred Dollars cash in hand, receipt of which is hereby acknowledged. The further sum of Sixty-five Thousand Seven Hundred Dollars. To be

Carr et al. v. Butterworth, 219 Ill. App. 14.

paid as follows: The sum of ($19,700) Nineteen Thousand Seven Hundred Dollars in cash, also second party is to cause to give back on above property a first Trust Deed securing notes aggregating Forty-six Thousand Dollars which notes are to run ten years and to draw semi-annual interest at the rate of 5½%. This deal is to be closed as soon as abstract is found to be merchantable and at the office of Frank W. Williams, Room 415 Ashton Bldg., Rockford, Ill., and to pay all taxes, assessments, or impositions that may be legally levied or imposed upon said land, subsequent to the year 1917. And in case of failure of said party of the second part to make either of the payments, or any part thereof, perform any covenants on his part hereby made and entered into, this contract shall, at the option of the party of the first part be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and in liquidation of all damages by her sustained, and she shall have the right to re-enter and take possession of the premises aforesaid, the party of the second part hereby agrees to pay to the party of the second part the sum of $300 as a forfeit in full of all liquidated damages in case of his failure to perform the covenants of this contract.

"It is Mutually Agreed, by and between the parties hereto, that the time of payment shall be the essence of this contract, and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.

"In Witness Whereof, the Parties to these presents have hereunto set their hands and seals, the day and year above written.

|  |  |
|---|---|
| Lizzie Butterworth | (Seal) |
| Edward E. Keating | (Seal) |
| John Felch | (Seal) |
| Alice M. Sheaff | (Seal) |

"Filed for record on the 30th day of October, A. D. 1917, at 2:40 o'clock, P. M.

"No. 123323                     John A. Bowman,
(Comp.)                         Recorder."

That the property was never purchased by Keating; that Keating in April, 1918, gave appellees a quitclaim deed of all interest in the property in question which had accrued to him by virtue of said writing, which in the quitclaim deed is called a contract or option; that said deed contained a clause as follows: "The delivery and acceptance of this deed being also intended as a cancellation of said contract or option, and a cancellation of all rights of each of the parties against the other, by reason thereof, and a settlement in full between the parties on all accounts"; that appellees retained the $300 paid by Keating and have paid appellants no commissions.

The law in this State is well settled that where an owner lists his real estate with a broker for sale, the broker has earned his commission (1) where the broker has procured a prospective purchaser, who is able, ready and willing to enter into a contract for purchase on the owner's terms and the owner refuses to enter into such contract, or (2) where the broker produces a prospective purchaser, whom the owner, without fraud on the part of the broker, accepts, and with whom the owner enters into a valid, binding, enforceable contract for sale, and in the latter case it is immaterial whether the contract is carried out or fails to be carried out by reason of the default of the prospective purchaser. *Monroe v. Snow,* 131 Ill. 136; *Fox v. Ryan,* 240 Ill. 391; *Farrell v. Almgren,* 211 Ill. App. 654.

Appellees introduced in evidence what they contend was the original writing signed by Keating and Mrs. Butterworth and retained by her and contend that the writing signed by Keating and the three appellees was a duplicate of this paper with the exception of being

signed by all three appellees. This writing was cer-
tified to this court by the trial judge and now appears
in words and figures as follows:

"ARTICLES OF AGREEMENT, Made this Eleventh day of
October A. D. 1917, BETWEEN Mrs. Lizzie Butterworth
of Rockford, Ills., party of the first part and Edward
E. Keating of Huntley, Ills., party of the second part:

"WITNESSETH, That if the party of the second part
shall first make the payments, and perform the cov-
enants hereinafter mentioned on his part to be made
and performed, the said party of the first part hereby
covenants and agrees to convey and assure to the said
party of the second part, in fee simple, clear of all
incumbrances, as shown by an authentic abstract made
by a regular abstractor, showing a good merchantable
and complete title, and by a good and sufficient War-
ranty Deed, the following described Real Estate, sit-
uated in the County of Winnebago and State of Illi-
nois, to-wit: Lot (9) Nine in block (3) Three, West
Rockford, Illinois. Said lot being known as (120) Num-
ber One Hundred Twenty North Main street, Rockford,
Ills. Size of said lot being (66) Sixty-six feet on North
Main St. by (156) feet deep said abstract above men-
tioned to be furnished by October 20th, 1917, and to
be continued to date of delivery of deed; and the said
party of the second part hereby covenants and agrees
to pay to the said party of the first part the sum of
Sixty-six Thousand Dollars ($66,000.00) in the manner
following: Three Hundred Dollars cash in hand Re-
ceipt of which is hereby acknowledged. The further
sum of Sixty-five Thousand Seven Hundred Dollars.
To be paid as follows: The sum of $19,700.00, Nine-
teen Thousand seven Hundred Dollars in cash. Also
second party is to cause to be given back on above
property, a first Trust-deed securing notes aggregating
Forty-six Thousand Dollars ($46,000). Which notes
are to run ten years and to draw semi-annual interest
at the rate of 5½% per annum. This deal is to be
closed as soon as abstract is found to be merchantable.
At the office of Frank W. Williams, Room 415, Ashton

Bldg., Rockford, Ills., and to pay all taxes, assessments, or impositions that may be legally levied or imposed upon said land, subsequent to the year 1917. And in case of failure of said party of the second part to make either of the payments, or any part thereof, or perform any covenants on his part hereby made and entered into, this contract shall be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and in liquidation of all damages by her sustained, and she shall have the right to re-enter and take possession of the premises aforesaid, the party of the second part hereby agrees to pay to the party of the second part the sum of $300.00 as a forfeit in full of all liquidated damages in case of her failure to perform the covenants of this contract.

"It is Mutually Agreed, By and between the parties hereto, that the time of payment shall be the essence of this contract; and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.

"In Witness Whereof, The Parties to these presents have hereunto set their hands and seals, the day and year first above written.

"Sealed and Delivered in Presence of

Lizzie Butterworth   (Seal)
Edward E. Keating   (Seal)
  (Seal)
  (Seal) "

Appellants contend that this latter instrument has been changed since execution and that such change is apparent on the face of the instrument. This latter instrument was not the writing entered into between Keating and appellees and is only material, if at all, as bearing upon the contents of the writing signed by Keating and appellees and on the question as to whether or not the recorder of deeds of Winnebago

county failed to correctly record such writing.

Appellees earnestly contend that the writing entered into between Keating and appellees was not an enforceable contract for sale, but was only an option. Keating was allowed over appellants' objection when testifying to characterize the writing as an option. This was not proper as the legal effect of the instrument was a matter to be determined by the court from the instrument itself.

In 39 Cyc. page 1179, it is said: "There is a contract of sale and not a mere option when the vendor is bound to convey to the purchaser upon the terms of the contract agreed upon and the latter is bound to purchase, even though the contract may be designated therein as an option." In 39 Cyc. page 1233, it is said: "In such contract two elements exist: First, the offer to sell, which does not become a contract until accepted; second, the completed contract to leave the offer open for the specified time." In *Adams v. Peabody Coal Co.*, 230 Ill. 469, it was said: "An option is a continuing offer which the offerer may not withdraw until the expiration of the time limited." In *Ide v. Leiser*, 10 Mont. 5, 24 Pac. 695, it was said: "There may be (1) a sale of lands; (2) an agreement to sell lands; and (3) what is popularly called an 'option.' The first is the actual transfer of the title from grantor to grantee by appropriate instrument of conveyance. The second is a contract to be performed in the future, and if fulfilled results in a sale. It is a preliminary to a sale, and is not the sale. Breaches, rescission or release may occur by which the contemplated sale never takes place. The third, an option, originally is neither a sale nor an agreement to sell. It is simply a contract by which the owner of property (real estate being the species we are now discussing) agrees with another person that he shall have the right to buy his property, at a fixed price, within a time certain. He does not sell his land; he does not then

agree to sell it; but he does then sell something, viz., the right or privilege to buy at the election or option of the other party. The second party gets, *in præsenti*, not lands, or an agreement that he shall have lands, but he does get something of value; that is, the right to call for and receive lands if he elects. The owner parts with his right to sell his lands, except to the second party, for a limited period. The second party receives this right, or rather, from his point of view, he receives the right to elect to buy. That which the second party receives is of value, and in times of rapid inflations of prices, perhaps of great value. A contract must be supported by a consideration, whether it be the actual sale of lands, an agreement to sell lands, or the actual sale of the right to demand the conveyance of lands. A present conveyance of lands is an executed contract. An agreement to sell is an executory contract. The sale of an option is an executed contract; that is to say, the lands are not sold; the contract is not executed as to them; but the option is as completely sold and transferred *in præsenti* as a piece of personal property instantly delivered on payment of the price. Now this option, this article of value and of commerce, must have a consideration to support its sale. As it is distinct from a sale of lands, or an agreement to sell lands, so its consideration must be distinct; although, if a sale of the lands afterwards follows the option, the consideration for the option may be agreed to be applied, and often is, as a part payment on the price of the land." This case is cited with approval in *Fulenwider v. Rowan,* 136 Ala. 287, 34 So. 975.

In 28 Amer. & Eng. Encyc. of Law 77, it is said: "The right to purchase land is frequently the subject of contract and such right may be styled an option. It is not an estate in land and an option is not a contract of sale. An option must be for a limited time, and if none is mentioned, will remain in force for a

reasonable time to be determined under all the circumstances of the case.''

In *Westervelt v. Huiskamp,* 101 Iowa 196, 70 N. W. 125, in construing a clause in a contract which read as follows: ''And it is hereby agreed and covenanted by the parties hereto that time and punctuality are essential ingredients in this contract, and, in case the second party shall fail to make the payments aforesaid, and each of them, punctually, and upon the strict terms and times above limited, and likewise to perform and complete each and all of his agreements and stipulations aforesaid, strictly and literally, without any failure or default, then this contract, so far as it may bind said first party (the United States Investment Company) shall become utterly null and void,'' the court said: ''It is the general rule that a stipulation, in a contract for the sale of land, that it shall be void in case the purchaser fails to perform the conditions of the contract, is for the benefit of the vendor, to be enforced or waived by him at his pleasure. *Sigler v. Wick,* 45 Iowa 692. The rule is stated in Warv. Vend. 820, as follows: 'A reserved right of forfeiture is the exclusive privilege of the vendor. If the vendee fails to fulfil the conditions of his agreement, the vendor may treat it as void or as in force. If money has been paid on the contract, he may retain it as a forfeit, or, if nothing has been received, he may elect to regard it in force, and sue for the purchase price, or he may declare it forfeited, and proceed for the recovery of the liquidated or other damages. The vendor, on the other hand, has no voice in terminating or continuing the agreement, and, even where an apparent option is given, where the contract provides that the purchase money shall be paid by instalments, and that, if the purchaser at any time fails to meet his payments, he will surrender his possession of the land to the vendor, this does not entitle the purchaser to elect whether he will pay the purchase money, or sur-

render the possession of the land.'" In *Grant v. Beronio,* 97 Cal. 496, 32 Pac. 556, the writing in controversy contained a provision: "In case of failure to make deed, money paid to be returned." In construing the writing the court held it to be a contract for sale and not an option, and said: "The agreement between the parties hereto was an unconditional contract on the part of the defendant to convey the land to the plaintiff upon his complying with its terms. The provision therein that, in case of failure to make the deed, the money was to be returned, was for the benefit of the purchaser alone, and did not give to the vendor the option of conveying the lot or not, as he might choose. He could not refuse to make the deed, and thus, by his own act, against the will of the purchaser, relieve himself of his obligation to convey."

In *Mason v. Caldwell,* 10 Ill. 196, a writing which contained the following clause was held enforceable as a bond for a deed of real estate: "But should the said John R. Caldwell, or his assignee, fail to pay the said sum of money specified in said notes, within ten days after the same became due, he hereby forfeits all claim to said lots, and all moneys paid thereon, and this bond, in such event, shall be void, both in law and equity, and the title to said lots shall continue in the original proprietor as if no sale has been made." In construing this clause the court said: "The defendant contends, that he can take advantage of this clause, and because he did not pay the money as he had agreed to do, he is exonerated from paying it at all. It is argued, that because the obligee, in the event of nonpayment, may treat the bond as determined, mutuality requires that the obligor should have the same privilege. This argument refutes itself. It is as much *a felo de se,* as it would make the bond. To admit the defendant's position is to leave everything in his own hands. It allows him to defeat, or make the bond operative, as may best subserve his interest, without any

discretion on the part of the obligee. It converts the bond into a naked proposition absolutely binding on the seller, but which the purchaser may accept or reject by the payment or nonpayment of the money. By thus putting the entire control in the hands of the latter, all mutuality is destroyed. It was the undoubted intention of both parties, when they inserted this clause, to provide a penalty to insure a prompt performance by the purchaser. By performance he leaves no discretion in the hands of the obligee, but has a right to enforce the bond, while, if he does not, he agrees to leave it optional with the other party to avoid the contract or not. Here was a real mutuality; for the purchaser had the first discretion, and if he placed himself in the power of the party, it was by his own voluntary neglect to pay the money, as he had bound himself to do, and it was but a just penalty for violating his obligation. But this is not a case of first impression. This precise question has been fully settled by a number of decisions in other States. The first case to which we shall refer is that of *Canfield v. Westcott,* 5 Cow. (N. Y.) 270; and two other cases are given in a note to that, where the same court had held the same rule, in the last of which (*Church v. Ayres*) almost the identical words are used which are found in the avoiding clause of this bond: 'Otherwise, these presents to be void both at law and in equity.' In all of these cases the court held that the avoiding clause was inserted for the benefit of the obligee, and that the obligor could not take advantage of his own neglect in the nonpayment of the consideration. The same construction was given to a similar clause in the case of *Manning v. Brown,* 1 Fairf. [Me.] 49. The same principle was sustained in Kentucky, in *Barbour's Ex'rs v. Brookie,* 3 J. J. Marsh. 511. But it hardly requires authority to support what is so easily demonstrated by reason.''

Applying the rules deduced from these authorities,

we are of the opinion that neither the writing signed by Keating as it appears upon the records of the recorder of deeds of Winnebago county nor the writing as claimed by appellees is an option but each of them is an agreement for sale.

The writing as claimed by appellees had none of the distinguishing characteristics of an option, but all its terms and provisions were those of a contract for sale. It is headed "Articles of Agreement for warranty deed with forfeit." By its terms Keating unqualifiedly agrees to pay for the property in question and appellees agree to sell and convey it to him when the payments are made. It is mutual, and by its terms is made binding upon the heirs, executors, administrators and assigns of both parties. It provides for damages for a breach of the contract by either party and provides different measures of damages for breaches of the contract by the different parties.

It is contended by appellees that the writing in question is not a valid, enforceable contract on account of the clause which they claim reads: "And in case of failure of said party of the second part to make either of the payment, or any part thereof, or perform any covenants on his part hereby made and entered into, this contract shall * * * be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payments shall be retained by said party of the first part in full satisfaction and in liquidation of all damages by her sustained." The main reason assigned for it not being enforceable is that it by its terms provides for liquidated damages and for that reason cannot be enforced in a court of equity. When a contract for sale contains a provision for liquidated damages in case of breach a court of equity will not for that reason, alone, decline to enforce it in a court of equity. *Lyman v. Gedney*, 114 Ill. 388; *Koch v. Streuter*, 218 Ill. 546; *Mikelaiczak v. Kruppa*, 254 Ill. 209. In *Gron-*

*owski v. Jozefowicz,* 291 Ill. 266, it was said: "If it had been stipulated in the written agreement that upon a failure to perform the contract the party refusing to perform shall pay $500 as liquidated damages, that provision would not prevent a court of equity from decreeing a specific performance."

A contract for the sale of real estate need not, however, be enforceable in a court of equity to be a valid, binding, enforceable contract. Contracts are enforceable at law as well as equity, and no one would question for a moment that were Keating to bring suit against appellees for the $300 paid by him, the court would enforce the contract in their favor.

We find from the undisputed facts in the case that appellees listed their property with appellants for sale; that appellants produced a prospective purchaser who was acceptable to appellees and with whom, without fraud on the part of appellants, appellees entered into a valid, binding, enforceable contract and that therefore appellants were entitled to their commissions, amounting to $1,650.

The judgment is not supported by the evidence and the cause is therefore reversed and remanded.

*Reversed and remanded.*