946 So.2d 1120 (2006)
Theresa S. POLK, Appellant,
v.
BHRGU AVON PROPERTIES, LLC, Appellee.
No. 2D06-2426.
District Court of Appeal of Florida, Second District.
December 13, 2006.
*1121 Jack Emory Farley of J. David Pobjecky, P.A., Winter Haven, for Appellant.
Gary R. Gossett, Jr., of Gossett Law Offices, Sebring, for Appellee.
STRINGER, Judge.
Theresa S. Polk ("Polk") seeks review of the final judgment, which ordered the specific performance of a real estate sales contract for the sale of her real property to BHRGU Avon Properties, LLC ("Avon"). Polk argues that the trial court erred in enforcing a contract between the parties because Avon's power of acceptance had been terminated. We agree and reverse.
This case involves the sale of a residence and 181 acres of land in Polk County. Polk listed the property for sale with a real estate agent at a sale price of *1122 $1,299,000. On January 24, 2005, Avon made an offer to buy the property. Polk rejected the offer by making counteroffers on February 2 and February 3, 2005. There were some differences between the two counteroffers. However, both counteroffers provided that Avon had until 5 p.m. on February 7, 2005, to accept or reject them: "Seller counters Buyer's offer (to accept the counter offer, Buyer must sign or initial the counter offered terms and deliver a copy of the acceptance to the Seller by 5:00 p.m. on 2/7/05)."
On February 4, 2005, Avon made another offer, which altered the material terms of the counteroffers. Polk did not respond to the February 4 offer, and Avon signed both of Polk's counteroffers and delivered them before the February 7 deadline. Avon also delivered a $25,000 deposit check to Polk's attorney, who accepted the check but eventually wrote "VOID" on it instead of cashing it.
When Polk refused to perform her duties under the signed counteroffers, Avon filed a suit seeking specific performance. The trial court ruled that Polk's two counteroffers constituted option contracts, which were "irrevocable as long as [Avon] accepted all its terms within the specified time limit and immediately binding when [Avon] did accept." The court ruled that Avon's February 4 offer did not automatically terminate its power to accept the option contracts and that Avon's acceptance created binding real estate sales contracts. In the alternative, the court concluded that Polk accepted the signed counteroffers by failing to object when they were presented to her with the deposit check. The court ordered the specific performance of one of the two signed counteroffers and suggested that the parties determine which counteroffer to perform between themselves.
On appeal, Polk argues that the trial court erred in ordering specific performance of the signed counteroffers because they were not enforceable contracts. Polk contends that her counteroffers were not irrevocable option contracts because they were unsupported by consideration. Polk argues that Avon's February 4 offer was therefore a counter-counteroffer that automatically terminated Avon's power of acceptance of her counteroffers.
"An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer." Restatement (Second) of Contracts § 25 (1981). "An option contract has two elements: 1) the underlying contract which is not binding until accepted; and 2) the agreement to hold open to the optionee the opportunity to accept." Plantation Key Developers, Inc. v. Colonial Mtg. Co. of Ind., 589 F.2d 164, 168 (5th Cir.1979). In addition, an option contract requires consideration. Donahue v. Davis, 68 So.2d 163, 170 (Fla. 1953); Benson v. Chalfonte Dev. Corp., 348 So.2d 557, 559 (Fla. 4th DCA 1976); Restatement (Second) of Contracts § 87 (1981). If an "option" is not supported by consideration, it is considered an offer and not a contract. Donahue, 68 So.2d at 170.
In this case, the trial court made two findings regarding consideration: (1) because the absence of consideration was not made an issue at trial, it is not grounds to declare the contract ineffectual; and (2) the $25,000 deposit check constituted consideration. We conclude that both of these findings are erroneous.
First, even though consideration was not made an "issue" at trial, the counteroffers cannot be option contracts without consideration as a matter of law. Polk did not stipulate that there was consideration but merely failed to argue that the counteroffers did not constitute irrevocable *1123 option contracts due to lack of consideration. Furthermore, Polk did not stipulate that the counteroffers constituted irrevocable option contracts but vehemently argued to the contrary. The lack of consideration is not an affirmative defense of any sort that was required to be pleaded. Thus, the court's finding that the lack of consideration is not grounds to declare the contract ineffectual because it was "not made an issue at trial" is erroneous.
Second, the deposit check was indisputably consideration for the real estate sales contract, not the option contract. There are two contracts involved with the option to purchase real property: the option contract and the real estate sales contract. See Ronald Benton Brown, An Examination of Real Estate Purchase Options, 12 Nova L.Rev. 147, 148-49 (Fall 1987). The option contract is a unilateral contract that requires the offeror to hold open the offer to enter into the sales contract. Id. at 148. When the option contract is exercised, it will "ripen" into a sales contract. Id. at 149. Thus, the consideration for the option contract is separate and distinct from the consideration for the real estate sales contract. Ragan v. Schreffler, 306 S.W.2d 494, 499 (Mo.1957).
Avon argues an alternative basis for finding that Polk's counteroffers constituted irrevocable option contracts. Avon claims that a seal on the counteroffers rendered them irrevocable option contracts. The common law traditionally provided that affixing a seal on the offer was another way to secure an option contract. Restatement (Second) of Contracts § 87 cmt. a (1981). However, "[t]he erosion of the formality of the seal has made it less and less satisfactory as a universal formality." Id. Although Avon argued that a seal secured the option contracts in this case, we do not reach the issue of whether a seal is a viable method of securing an option contract in Florida because there is no evidence that there was an actual seal in this case. We reject Avon's argument that Polk's act of initialing the contract and encircling her initials in pen constituted a seal in these modern times wherein just about every contract contains this type of marking.
Because the counteroffers were unsupported by consideration, Polk's counteroffers were not irrevocable option contracts but simply counteroffers. Therefore, Avon's February 4 offer operated as a counter-counteroffer, which rejected Polk's counteroffers. Racing Props., L.P. v. Baldwin, 885 So.2d 881, 883 (Fla. 3d DCA 2004) ("the alteration of one of the material terms of a contract constitutes a counter-offer and rejection of said contract"), review denied, 905 So.2d 125 (Fla. 2005); Restatement (Second) of Contracts § 39 (1981).
Avon argues that, without consideration, the counteroffers would become revocable option contracts, not counteroffers. What the Florida Supreme Court has stated on this issue is, "Unless supported by a consideration, an `option' is considered as a mere offer which may be withdrawn at any time before acceptance." Donahue, 68 So.2d at 170. This does not mean that an option unsupported by consideration is still a unilateral contract; it means the `option' is an offer, or in this case, a counteroffer. As with regular contracts, the absence of consideration means that there is no contract at all. Thus, contrary to Avon's argument, the counteroffers were mere counteroffers, and Avon's February 4 offer was a counter-counteroffer that terminated its power of acceptance of Polk's counteroffers.
The Restatement explains the concept of counteroffer as rejection and contains an analogous illustration:

*1124 (1) A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer.
(2) An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree.
Comment:
a. Counter-offer as rejection. It is often said that a counter-offer is a rejection, and it does have the same effect in terminating the offeree's power of acceptance. But in other respects a counter-offer differs from a rejection. A counter-offer must be capable of being accepted; it carries negotiations on rather than breaking them off. The termination of the power of acceptance by a counter-offer merely carries out the usual understanding of bargainers that one proposal is dropped when another is taken under consideration; if alternative proposals are to be under consideration at the same time, warning is expected.
Illustration:
1. A offers B to sell him a parcel of land for $5,000, stating that the offer will remain open for thirty days. B replies, "I will pay $4,800 for the parcel," and on A's declining that, B writes, within the thirty day period, "I accept your offer to sell for $5,000." There is no contract unless A's offer was itself a contract (see § 37), or unless A's reply to the counter-offer manifested an intention to renew his original offer.
Restatement (Second) of Contracts § 39, cmt. a (1981).
As in the above illustration, Polk offered Avon to sell her parcel of land for a fixed price, stating that the offer would remain open for a time certain. Avon replied that it would purchase the parcel but altered a material term of Polk's counteroffers. Avon then attempted to accept Polk's counteroffers within the time period set forth therein. As the illustration reflects, there is no contract unless the counteroffers themselves were contracts or Polk's reply to the signed counteroffers manifested an intention to renew the counteroffers.
This leads us to the court's alternative basis for ordering specific performance of the contracts. The court found that Polk accepted the signed counteroffers by failing to object when they were presented to her with the deposit check. The problem with the court's findings on this issue is that they are based on Polk's failure to reject the signed counteroffers, as opposed to affirmative actions by Polk to renew the counteroffers. Polk was not required to expressly repudiate the signed counteroffers because the counteroffers had been rejected by Avon when it made the counter-counteroffer. In fact, the signed counteroffers would technically have been counter-counter-counteroffers, which Polk had every right to consider. There is simply no evidence that Polk ever affirmatively indicated an intent to accept the signed counteroffers. Polk's attorney may have accepted the deposit check from the realtor, but he did not cash the check and eventually wrote "VOID" on it.
The trial court relied upon the Fifth District's decision in Mid-Florida Realty Associates, Inc. v. Truesdell, 454 So.2d 747 (Fla. 5th DCA 1984), to support its holding on this issue. However, that case is not on point. The issue in Mid-Florida Realty was whether a real estate broker was entitled to his commission for obtaining a buyer who was ready, willing, and able to buy the property. Id. at 748. The buyer had *1125 executed a contract that complied with the listing but made a material deviation. The broker argued that he was entitled to his commission because the seller had accepted the contract despite its deviation from the listing terms. The trial court dismissed the complaint for failing to state a cause of action.
The Fifth District reversed, holding that the broker would be entitled to his commission if the seller accepted the contract or waived any objections to it, regardless of whether the contract closed. Id. at 749. It is in this context that the Mid-Florida Realty court held that the seller's "waiver or acceptance may be proved by showing actions or words of the seller inconsistent with a posture of rejecting the contract, or by express assent to the contractwritten or verbal. Such communications between buyer and seller may be transmitted through the parties' attorneys." Id. (citations omitted).
Unlike Mid-Florida Realty, this court does not confront the issue of whether a broker is entitled to a commission for delivering a buyer who was ready, willing, and able to buy the property. The issue before this court is whether a seller renewed her counteroffers after they were rejected by the buyer's counter-counteroffer.
In conclusion, Polk's February 2 and February 3 counteroffers were not irrevocable option contracts because they were unsupported by consideration. Avon's February 4 counter-counteroffer thus operated as a rejection of Polk's counteroffers and terminated Avon's power of acceptance of the counteroffers. Because Polk did not manifest an intent to renew her counteroffers, Avon's action of signing the counteroffers and returning them within the applicable time period did not render them enforceable real estate sales contracts. Thus, the trial court erred in ordering specific performance of one of the two real estate sales contracts, and we reverse and remand for entry of a final judgment in Polk's favor.
Reversed and remanded.
FULMER, C.J., and CANADY, J., Concur.