Richard G. McLellan, Rick Bogle,
and Primate Freedom Project,
Plaintiffs-Respondents-Cross-Appellants,†

v.

Roger L. Charly,
Defendant-Appellant-Cross-Respondent.

Court of Appeals

*No. 2007AP1120. Submitted on briefs December 7, 2007.
—Decided July 17, 2008.*

2008 WI App 126

(Also reported in 758 N.W.2d 94.)

† Petition to review denied.

626

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Allen A. Arntsen, Michael S. Heffernan*, and *Theresa A. Andre* of *Foley & Lardner LLP*, Madison, and *Jon C. Manzo*, of counsel, Middleton.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the briefs of *Kendall W. Harrison* and *Steven A. Heinzen* of *Godfrey & Kahn, S.C.*, Madison.

Before Dykman, Vergeront and Bridge, JJ.

¶ 1. VERGERONT, J. Roger L. Charly appeals the

circuit court's order that he convey certain real estate to Richard McLellan pursuant to an option to purchase. The circuit court concluded that leaseback and repurchase provisions in the agreement between Charly and McLellan constituted consideration for the option and Charly breached the agreement by revoking the option before the expiration of the specified time period. Charly contends there was no consideration for the option and, thus, he could revoke it at any time. He also contends the circuit court erred in concluding that the interest of third parties was not an appropriate factor in deciding whether to grant specific performance.

¶ 2. We conclude that, in order to make the option a binding option contract, consideration is required that is separate from the consideration for the sale. We further conclude that the leaseback and repurchase provisions are not consideration separate from the consideration for the sale. Finally, we conclude that the other grounds the plaintiffs advance as separate consideration—Charly's intent to be bound by the option, Charly's personal satisfaction, and the efforts of Rick Bogle, who is not a party to the option, to obtain financing—do not constitute the requisite separate consideration for the option. Charly was therefore free to revoke the option. Accordingly, we hold that the circuit court should have dismissed McLellan's breach of contract claim in addition to dismissing the breach of contract claims of Bogle and the Primate Freedom Project.

¶ 3. With respect to the plaintiffs' claims for relief under the doctrine of promissory estoppel, we conclude Bogle is not entitled to enforcement of Charly's oral promise to him under this doctrine and none of the three plaintiffs are entitled to enforcement of the option under this doctrine.

629

¶ 4. Because of these conclusions we need not address Charly's challenge to the court's order of specific performance.

¶ 5. Accordingly, we affirm the circuit court in part, reverse in part, and remand with instructions to dismiss the complaint. On remand the court is also directed to vacate its order dismissing Charly's counterclaim and enter an order consistent with this opinion.

## BACKGROUND

¶ 6. The following facts are taken from the circuit court's findings of fact and are not disputed on appeal. The property in dispute is owned by Charly and located at 26 North Charter Street in Madison, between the University of Wisconsin's Harlow Primate Psychology Laboratory and the Wisconsin National Primate Research Center. In 2003 and again in early 2005, the University had expressed to Charly an interest in acquiring the property. Charly said he wanted one million dollars for the property and nothing further came of those conversations at the time.

¶ 7. In July 2004, Rick Bogle, an animal rights activist, met with Charly to ask about purchasing the property. Its location was appealing to Bogle because he opposed the work taking place in the two neighboring facilities. Bogle informed Charly he wanted to use the property for a National Primate Research Center Exhibition Hall, and Charly said he would sell the property to Bogle for $750,000. Charly understood that Bogle had to raise the purchase money. Dr. Richard McLellan agreed to borrow the money to purchase the property, with the understanding that Bogle would be responsible for making payments and reimbursing him. In October 2004, Bogle notified Charly that he had found the money and was moving to Madison.

630

¶ 8. The parties agreed that Bogle would have an attorney he had contacted draft an agreement. Charly and McLellan executed a document titled "Option to Purchase" effective May 10, 2005, that granted McLellan or his assign the option of purchasing the property for $675,000 within 180 days and permitted the buyer to extend the option for an additional ninety-day period. The agreement contained detailed provisions on the terms of the sale, including leaseback and repurchase provisions.

¶ 9. In June 2005, Bogle organized a rally at the property and posted a sign reading "Future Home of the National Primate Research Exhibition Hall," which contained a picture of a monkey with a device screwed into its skull. Charly had agreed the sign could be put up. Soon after the rally, a University representative called Charly to express its opposition to having the exhibition hall on the property and said the University was still interested in the property. Charly responded that he still wanted $1,000,000 for the property.

¶ 10. Shortly thereafter, Charly took the agreement he and McLellan had signed to another attorney. In a letter to McLellan on Charly's behalf, the attorney stated that the option was "voidable and void due to lack of consideration" and offered to enter into an option with different terms. McLellan declined to do that.

¶ 11. On August 1, 2005, Charly received a proposed option to purchase from the University under which the University had the option of purchasing the property for $1,000,000. By notice dated August 12, 2005, McLellan attempted to exercise his option to purchase the property but the envelope was returned to him unopened. Through counsel, Charly informed McLellan there was no enforceable option and he declined to sell the property to him.

631

¶ 12. McLellan, Bogle, and the Primate Freedom Project, an organization Bogle founded, filed this action alleging claims for breach of contract and promissory estoppel and seeking specific performance of the agreement McLellan and Charly had signed. Charly answered, pleading lack of consideration among other defenses, and a counterclaim seeking a declaration that neither McLellan nor any other plaintiff had an interest in the property.

¶ 13. After a trial to the court, the court determined there was consideration for the option, with the result that Charly could not revoke the offer to sell the property within the specified time period. The court decided that the leaseback provision and the repurchase provision in the agreement each constituted adequate consideration. The court found Charly had asked for the leaseback provision so that he could continue to use the property for storage. It found he had negotiated a reduction in the price in the repurchase provision McLellan requested, a modification that he, Charly, perceived as having a tax advantage to him. The court rejected the plaintiffs' two alternative theories of consideration—Charly's personal satisfaction at selling to someone other than the University and the plaintiffs' efforts to obtain financing. With respect to this latter theory, the court found that there was no evidence that McLellan made any effort to obtain financing and Bogle's efforts to obtain funds to repay McLellan could not constitute consideration for the option given by Charly to McLellan.

¶ 14. Having concluded there was consideration for the option, the court decided that specific performance was the appropriate remedy, rejecting Charly's contention that the court should consider the harm to the interests of third parties and to the public as a basis

for declining to award specific performance. The court ordered conveyance of the property to McLellan and dismissed the breach of contract claims of Bogle and the Primate Freedom Project. The court also dismissed Charly's counterclaim.

¶ 15. Although the court's ruling on consideration made it unnecessary to address the plaintiffs' promissory estoppel claims, the court did so. It concluded they were not entitled to relief on this alternative ground and dismissed the promissory estoppel claim of each plaintiff.[1]

¶ 16. Charly's motion for reconsideration was denied.

## DISCUSSION

¶ 17. On appeal Charly contends the circuit court erred in determining the leaseback and repurchase provisions were adequate consideration for the option. Among other reasons, he asserts the consideration required to make an option a binding contract must be separate from the consideration for the sale and therefore cannot be satisfied by the terms negotiated for the sale. He also asserts that the court erroneously exercised its discretion in ordering specific performance.

¶ 18. The plaintiffs respond that the leaseback and repurchase provisions are sufficient consideration for the option, even if separate consideration is required. In the alternative, they argue that the court erred in rejecting their alternative theories of consideration. They also assert the circuit court properly exercised its discretion in granting specific performance. However, they challenge the court's ruling that they are

[1] The court made a number of alternative rulings, anticipating an appeal. This has greatly facilitated our review.

not entitled to relief based on their claims of promissory estoppel and assert that this is an alternative basis for ordering specific performance.[2]

¶ 19. We first address the issue whether the consideration required for a binding option contract must be separate from the consideration for the sale of the property. We conclude it must be. We next address the issue whether there was separate consideration for the option in this case and we conclude there was not. Finally, we consider whether the doctrine of promissory estoppel entitles any of the three plaintiffs to relief, and we conclude it does not. Because it follows from these conclusions that the plaintiffs are not entitled to an order that the property be conveyed to any one of them, we do not address Charly's challenge to the court's order of specific performance.

I. Requirement of Separate Consideration for Option Contract

██

¶ 20. Whether consideration separate from consideration for the sale is required in order to make an

---

[2] The plaintiffs' challenge to the circuit court's ruling on their promissory estoppel claims is contained in a cross-appeal. A cross-appeal is unnecessary in order to raise this challenge because the plaintiffs are not seeking relief that is different than that ordered by the circuit court. *See* Wis. Stat. Rule 809.10(2)(b) (2005–06); *Auric v. Continential Cas. Co.*, 111 Wis. 2d 507, 516, 331 N.W.2d 325 (1983). They are simply arguing that they are entitled to that same relief on an alternative ground. We therefore address the plaintiffs' arguments on their promissory estoppel claims as though they were presented in their responsive brief.

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

option a binding option contract presents a question of law, because it requires us to decide the correct legal standard. *See Republic Bank of Chicago v. Lichosyt*, 2007 WI App 150, ¶ 24, 303 Wis. 2d 474, 736 N.W.2d 153 (whether circuit court applied correct legal standard is a question of law). Thus, although this issue was not raised below, we may address it on appeal. *See Apex Elecs. Corp. v. Gee*, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998). Having given the parties the opportunity to address this issue in supplemental briefs, we choose to decide it.

■

¶ 21. *Bratt v. Peterson*, 31 Wis. 2d 447, 451, 143 N.W.2d 538 (1966), provides the fundamental framework for the law regarding options in Wisconsin:

> An option to purchase is a continuing promise or offer given by the landowner to sell real estate to another at a specified price within a specified period of time. The offer ripens into a binding and irrevocable "option contract" if consideration is given, but can be withdrawn any time before acceptance if not based on consideration. Once the "option contract" or offer is accepted, a contract of sale arises.

(Citations omitted.)

¶ 22. Consistent with *Bratt* and to avoid confusion, we will use the term "agreement" to refer to the entire written agreement signed by McLellan and Charly, and we will use the term "option" to describe the provisions in the agreement that pertain to the option to purchase, specifically, paragraphs 1 through 5. We will reserve the term "option contract" for an option that is a binding contract supported by consideration.

¶ 23. We agree with Charly that, if the consideration required to make an option a binding and irrevocable option contract could be found in the terms

negotiated for the purchase, then every option would be binding and irrevocable because there would always be, by definition, at least a purchase price included in the option. We also agree that such a result appears inconsistent with the law as articulated in *Bratt*. However, the court in *Bratt* did not address this specific issue because it did not arise, given the facts of that case. The initial written option in *Bratt* recited that the consideration was the receipt of "[o]ne dollar and other valuable consideration," but a written extension of the option did not recite any consideration. *Id.* at 449–50. The issue before the court was whether the statute of frauds, then WIS. STAT. § 240.08 (1963), required that the written extension of the option recite the consideration. *Id.* at 452–53. The court concluded this was required.[3]

¶ 24. The parties agree that no reported Wisconsin case expressly addresses whether the consideration required to make an option to purchase a binding and irrevocable option contract must be separate from the terms for the sale. However, the cases they have presented from other jurisdictions and our own research show a consistent adherence to the rule that there must

---

[3] The court in *Bratt v. Peterson*, 31 Wis. 2d 447, 454–55, 143 N.W.2d 538 (1966), did not definitively decide the extension of the option was void for noncompliance with the statute of frauds because it concluded that further proceedings were needed to determine whether equitable estoppel prevented that defense. We note that, unlike the version of the statute of frauds that was applicable in *Bratt*, the current statute does not require consideration to be recited in the writing. *See* WIS. STAT. § 706.02. In addition, while *Bratt* applied the common law doctrine of equitable estoppel, WIS. STAT. § 706.04(3) (enacted by 1969 Wis. Laws, ch. 285, § 23) now contains equitable considerations that permit relief in spite of a failure to comply with the requirements of § 706.02.

be some consideration for the option that is separate from the consideration for the sale of the property, in order for the option to be a binding contract.[4] Indeed, the plaintiffs have cited no case, and we have discovered none, in which a court has applied a contrary rule.

¶ 25. The reasoning underlying the rule that there must be separate consideration for an option contract is that an option contract and a contract of sale are two separate contracts: the former is a contract

[4] *See McLamb v. T.P., Inc.*, 619 S.E.2d 577, 581–82, (N.C. Ct. App. 2005); *Fru-Con Constr. Corp. v. KFX, Inc.*, 153 F.3d 1150, 1156, 1158 (10th Cir. 1998) (applying Missouri law); *Ragan v. Schreffler*, 306 S.W.2d 494, 498–99 (Mo. 1957); *Foy v. Foy*, 484 So. 2d 439, 442–43 (Ala. 1986); *Country Club Oil Co. v. Lee*, 58 N.W.2d 247, 250 (Minn. 1953); *Aspinwall v. Ryan*, 226 P.2d 814, 817 (Or. 1951); *Bowen v. Vance*, 218 P.2d 628, 639 (Okla. 1950); *Ide v. Leiser*, 24 P. 695, 696 (Mont. 1890); *Ford v. McGregor*, 234 S.W.2d 493, 495 (Ky. 1950); *First Dev. Corp. v. Martin Marietta Corp.*, 959 F.2d 617, 621–22 (6th Cir. 1992) (applying Kentucky law); *Yee Hop v. Nakuina*, 27 Haw. 286, 291 (Haw. 1923); *Polk v. BHRGU Avon Props., LLC*, 946 So. 2d 1120, 1122 (Fla. Dist. Ct. App. 2006); *S&M Mach., Inc. v. Paravis Indus., Inc.*, No. 266316, unpublished slip op. at 2 (Mich. Ct. App. Feb. 15, 2007); *Carr v. Butterworth*, 219 Ill. App. 14, 22 (Ill. App. Ct. 1920).

*See also* 92 C.J.S. *Vendor and Purchaser* § 108 (2008) ("In the absence of consideration, an attempted, or socalled [sic], option is, in effect, a mere offer" and "[t]he consideration for the option must be separate and distinct from the consideration for the sale[.]"); 77 Am. Jur. 2d *Vendor and Purchaser* § 39 (2006) (noting that the consideration for an option must be distinct from the consideration for the sale in order for the option to be binding prior to acceptance); 3 ERIC MILLS HOLMES, CORBIN ON CONTRACTS § 11.7 n.11 (rev. ed. 1996) ("If no down payment were made and [an] option holder merely promised to pay . . . in the event the holder exercised the option, there would have been no sufficient consideration and the so-called 'option' would have been a revocable offer only.").

that vests the optionee with the unilateral right to accept the continuing offer during a stated period of time, while the sale contract comes into being only if and when the optionee exercises the option. *See, e.g., Foy v. Foy*, 484 So. 2d 439, 442–43 (Ala. 1986); *Country Club Oil Co. v. Lee*, 58 N.W.2d 247, 250 (Minn. 1953); *Fru-Con Constr. Corp. v. KFX, Inc.*, 153 F.3d 1150, 1156, 1158 (10th Cir. 1998) (applying Missouri law); *Polk v. BHRGU Avon Props., LLC*, 946 So. 2d 1120, 1122 (Fla. Dist. Ct. App. 2006). This recognition that there are two separate contracts and each must be supported by consideration is consistent with the statement from *Bratt*, 31 Wis. 2d at 451, cited in paragraph 21 above.

¶ 26. We are persuaded that the rule applied in other jurisdictions—requiring consideration for an option contract that is separate from the consideration for the sale—is the proper rule, and we adopt it. It is consistent with *Bratt* and it flows logically from *Bratt*'s recognition that there are two separate contracts. The plaintiffs do not present a rationale for adopting a contrary rule, and we can see no rationale for doing so.

II. Existence of Separate Consideration for this Option

¶ 27. Consideration may be either a benefit to the promisor or a detriment to the promisee. *First Wis. Nat'l Bank v. Oby*, 52 Wis. 2d 1, 6, 188 N.W.2d 454 (1971). In either case, the benefit or the detriment must be bargained for. *See Hansen v. Firemen's Ins.*, 21 Wis. 2d 137, 143–44, 124 N.W.2d 81 (1963). In deciding if there is consideration to support a contract, courts are not concerned with the adequacy of the consider-

ation but with "the existence of legal consideration because '[t]he adequacy in fact, as distinguished from value in law, is for the parties to judge for themselves.' " *St. Norbert Coll. Found., Inc. v. McCormick*, 81 Wis. 2d 423, 430, 260 N.W.2d 776 (1978) (citations omitted). "A consideration of even an indeterminate value, incapable of being reduced to a fixed sum, can be sufficient to constitute legal consideration." *Id.* at 430–31.

¶ 28. Because we are reviewing an order entered after a trial to the court, we accept all findings of fact by the court unless they are clearly erroneous. WIS. STAT. § 805.17(2). Whether the court applied the correct legal standard is a question of law, *Republic Bank of Chicago*, 303 Wis. 2d 474, ¶ 24, as is whether the facts found by the circuit court constitute consideration according to the correct legal standard. *Yao v. Chapman*, 2005 WI App 200, ¶ 41, 287 Wis. 2d 445, 705 N.W.2d 272. We review questions of law de novo. *Id.*, ¶ 21.[5]

[5] The plaintiffs contend that we should give weight to the circuit court's legal conclusions because the question of consideration presents a mixed question of fact and law, citing *Yao v. Chapman*, 2005 WI App 200, ¶ 21, 287 Wis. 2d 445, 705 N.W.2d 272. At that point in *Yao*, we are discussing a negligence claim and it is in that context we say that, "[w]hile typically we review de novo a trial court's legal conclusions, where, as here, they are intertwined with the factual findings, we give weight—though not total deference—to the trial court's decision." *Id.* Later in *Yao* when we discuss whether there is consideration for the contract claim, we do not defer to the circuit court on the issue of whether the facts constitute the legal standard for consideration. We say:

> While the question of whether consideration supports a contract is normally a question of fact, *NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 838, 520 N.W.2d 93 (Ct. App. 1994), here the evidence as to consideration is so lacking that we comfortably state as a matter of law that no contract was achieved. *Cf. Siva Truck Leasing, Inc. v.*

¶ 29. The agreement Charly and McLellan signed contained the following provision:

## Consideration for Option

The parties acknowledge receipt of adequate consideration for this Option to Purchase. There shall be no payment due seller for the rights granted hereunder.

¶ 30. The plaintiffs assert on appeal as they did in the circuit court that this statement of consideration

*Kurman Distribs.*, 166 Wis. 2d 58, 68, 479 N.W.2d 542 (Ct. App. 1991) (In determining whether there was sufficient consideration for a novation, weight is accorded the trial court's decision, but whether the facts fulfill a legal standard is a matter of law.).

*Yao*, 287 Wis. 2d 445, ¶ 41. Thus, in *Yao*, we do not view the issue of consideration as presenting an intertwining of legal conclusions with facts, which might warrant deference to the circuit court's legal conclusions.

We also point out that, while in *NBZ* we said "[w]hether consideration supports a contract presents a question of fact[,]" 185 Wis. 2d at 838, we did so in the context of considering the court's findings on what occurred in the forming of that contract. We had already used a de novo standard of review to decide the correct legal standard to apply to the facts. 185 Wis. 2d at 835–37. *NBZ* is thus consistent with the standard of review we apply in this case—separating the questions of law from the issues of historical fact and deciding the former under a de novo standard of review.

Although we are satisfied that deference to the circuit court's legal conclusions regarding consideration is not appropriate, we observe that in this case the plaintiffs would not benefit from such deference. The legal issues we decide against the plaintiff regarding consideration are either ones the circuit court did not decide, *see infra* paragraphs 33–35,—and therefore we have no legal conclusions from the circuit court to defer to—or they are issues the circuit court decided against the plaintiffs. *See infra* paragraphs 36–46.

creates a rebuttable presumption that there was adequate consideration, citing *Wortley v. Kieffer*, 70 Wis. 2d 734, 740, 235 N.W.2d 296 (1975) (recitation in a guaranty that consideration exists is sufficient to raise a presumption that consideration exists). Charly agreed with this proposition in the circuit court and does not dispute it on appeal. We treat Charly's failure to dispute this assertion in the plaintiffs' responsive brief as a concession that it is correct. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994).

¶ 31. Similarly, the plaintiffs assert that, because of the rebuttable presumption, Charly has the burden of showing by clear and satisfactory evidence that consideration was lacking, citing *Jax v. Jax*, 73 Wis. 2d 572, 586, 243 N.W.2d 831 (1976) (a negotiable instrument carries with it a presumption of consideration and the party challenging a lack of consideration must prove that lack by clear and convincing evidence). Charly does not dispute this assertion, either. We therefore take this as a concession it is correct. *See Schlieper*, 188 Wis. 2d at 322.

¶ 32. Charly contends there is no evidence of consideration for the option separate from the consideration for the sale. In particular, he asserts that the only consideration the circuit court found—the leaseback and repurchase provisions—were for the sale, not for the option. The plaintiffs disagree and also assert the court erred in rejecting three additional bases for consideration. We discuss each of the four potential bases for consideration.[6]

---

[6] In a footnote, the plaintiffs bring to our attention RESTATE-MENT (SECOND) OF CONTRACTS § 87(1) (1981), which provides that an offer is binding as an option contract if it "is in writing and signed by the offeror, recites a purported consideration for the

¶ 33. The leaseback and repurchase provisions, like all the other terms for the sale of the property, apply only if McLellan exercises the option within the prescribed period of time.[7] If McLellan does not do so,

---

making of the offer, and proposes an exchange on fair terms within a reasonable time[.]" This was recently adopted in Texas, *1464–Eight, Ltd. v. Joppich*, 154 S.W.3d 101, 110 (Tex. 2004), with the court there acknowledging it to be "the minority position among the limited number of state supreme courts that have addressed the question." The circuit court here concluded it was bound to apply *Bratt*, 31 Wis. 2d at 451, because the Wisconsin Supreme Court had not adopted this Restatement provision. The plaintiffs state in the footnote that they "do not press the question before this Court, recognizing that only the Wisconsin Supreme Court can change existing Wisconsin law." We therefore do not address this issue.

[7] The leaseback and repurchase provisions state:

### 7. *POSSESSION AND OCCUPANCY*

Legal possession of Property shall be delivered to Buyer on date of closing. Occupancy of the Property shall be given to Buyer on date of closing. It is understood the Property is not subject to any lease at this time, however Buyer and Seller shall enter into a lease agreement at or prior to Closing whereby Seller will leaseback the Property from Buyer on mutually agreeable terms. If the Parties fail to enter into a lease at or prior to Closing, the Buyer may, but shall not be obligated to, declare this Option Agreement null and void, and if declared null and void by Buyer, neither Party shall have any further obligations to the other under this Agreement.

. . . .

### 13. *REPURCHASE*

The parties agree that at any time within the twenty-four (24) months following closing hereunder, the Buyer may elect to provide written notice to Seller requiring Seller to repurchase the Property from Buyer (the "Repurchase") upon the terms provided hereunder. The Repurchase price shall be the original purchase price paid by the Buyer for the Property less the sum of $40,000 and less the sum of any and all rental payments made by Seller to

there is no contract for sale and thus no benefit to Charly from these provisions. The plaintiffs argue that the leaseback provision and the reduction in the repurchase price led to Charly's decision to agree to the option. The court did not make this precise finding.[8] But even if it were these two particular provisions that led Charly to agree to the option, like all the bargained-for terms of the sale that benefit the seller, these two provisions are a benefit to the seller only if the option is timely exercised and a sale occurs. In other words, they are consideration for the sale contract, but not separate consideration for the option contract.

¶ 34. The plaintiffs argue that there is a lack of uniformity among the cases from other jurisdictions as to what constitutes separate consideration and, they contend, this inconsistency supports their position that the leaseback and repurchase provisions may constitute the requisite consideration. We disagree. The cases the plaintiffs cite on this point simply show a disagreement among jurisdictions on when a deposit paid upon execution of the option constitutes consideration separate from consideration for the sale. *Compare McLamb v. T.P., Inc.*, 619 S.E.2d 577, 581–82 (N.C. Ct. App. 2005) ($500 deposit that would go toward the purchase price if the option were exercised and was refundable in full upon the request of the depositing party is not suffi-

---

Buyer as a tenant during the time Buyer owns the property. . . .

[8] The court's written findings were:

11. McLellan was concerned that he not get stuck with the property if Bogle was unsuccessful at re-paying him. At McLellan's request, Charly agreed to a provision requiring him to buy the property back from them at an agreed-upon price.

12. McLellan and Bogle agreed to Charly's request that he could rent space back after the sale for his bicycle storage.

cient consideration for the option), *with Country Club Oil Co.*, 58 N.W.2d at 250 ($100 paid for an option that would go to the purchase price if the option was exercised constitutes the requisite separate consideration),[9] *King v. Hall*, 306 So. 2d 171, 173 (Fla. Dist. Ct. App. 1975) (deposit of $3,000, which would be returned to the optionee if he did not exercise the option with fifteen days, constituted sufficient consideration for the option because it was a detriment or inconvenience to post it and buyer was deprived of its use while it was posted), *and Benson v. Chalfonte Dev. Corp.*, 348 So. 2d 557, 559–60 (Fla. Dist. Ct. App. 1976) (on similar facts there is an issue for jury as to whether there was consideration). None of these cases suggest that a benefit or detriment that does not occur unless there is a sale constitutes the requisite separate consideration for the option.

¶ 35. We conclude the leaseback provision and the reduced repurchase price do not constitute consideration for the option contract that is separate from consideration for the sale contract.

¶ 36. Second, the plaintiffs contend there is evidence of intent to be bound by the option contract and, contrary to the circuit court's ruling, intent to be bound is sufficient in itself to constitute consideration. We agree with the circuit court that it is not sufficient.

¶ 37. The plaintiffs rely on our statement in *Gustafson v. Physicians Insurance Co.*, 223 Wis. 2d 164, 173, 588 N.W.2d 363 (Ct. App. 1998), that "[c]onsider-

---

[9] We note that *McLamb*, 619 S.E.2d at 581–82, and *Country Club Oil Co.*, 58 N.W.2d at 250, may not be inconsistent because the latter option contract, unlike the former, did not contain a provision that the sum paid was refundable upon request.

ation exists if an intent to be bound to the contract is evident[,]" and on a citation to this statement in a later case, *Piaskoski & Associates v. Ricciardi*, 2004 WI App 152, ¶ 7, 275 Wis. 2d 650, 686 N.W.2d 675. The complete paragraph in *Gustafson* provides:

> According to hornbook law, a contract consists of an offer, an acceptance and consideration. *See NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 837, 520 N.W.2d 93, 96 (Ct. App. 1994). An offer and acceptance exist when mutual expressions of assent are present. *See id.* Consideration exists if an intent to be bound to the contract is evident. *See id.*

223 Wis. 2d at 173. The paragraph in *NBZ* we were citing to in *Gustafson* provides in relevant part:

> It is hornbook law that "offer," "acceptance" and "consideration" are elements of an enforceable contract. The existence of an offer and acceptance are mutual expressions of assent, and consideration is evidence of the intent to be bound to the contract.

185 Wis. 2d at 837 (citing 1 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS, §§ 11, 112 (1963)). This statement in *NBZ* does not say that evidence of intent to be bound in itself constitutes consideration; it says that consideration is evidence of intent to be bound. Indeed, as Charly points out, the citation in *NBZ* to CORBIN ON CONTRACTS makes clear that intent to be bound is not the same as consideration:

> The question "Is consideration evidence of intention to be bound?" has sometimes been answered yes by those who have regarded consideration as merely evidence of intention to be bound .... However, neither "serious intent" nor intention to be legally bound is required for an enforceable contract.

2 JOSEPH M. PERILLO AND HELEN HADJIYANNAKIS BENDER, CORBIN ON CONTRACTS § 5.3 (former § 112) (rev. ed. 1995).

¶ 38. Our statement in *Gustafson* was an inartful and, no doubt, confusing paraphrase of *NBZ*. It was *not* a one sentence ruling that established a new category of consideration. There was consideration in *Gustafson* in the form of a contingent fee, 223 Wis. 2d at 168, 174, and therefore we had no reason to discuss an alternative view of consideration. After the one sentence citation to *NBZ* in setting forth the background law, we did not mention intent again in *Gustafson*. The same is true of *Piaskoski*. In that case we cited the one sentence from *Gustafson* in setting forth the background law. *Piaskoski*, 275 Wis. 2d 650, ¶ 7. However, there was consideration in *Piaskoski* in the form of a mutual reduction in the attorney fees claimed and we did not again mention the parties' intent. *Id.*, ¶¶ 8, 17.

¶ 39. Third, the plaintiffs argue that the evidence of Charly's personal satisfaction at "tweaking" the University constituted separate consideration for the option. The plaintiffs emphasize in their supplemental brief that this satisfaction was not entirely dependent upon a sale taking place and thus it constitutes consideration separate from that for the sale. This is so, according to the plaintiffs, because the "tweaking" occurred at least in part when the prospective sale was made public at the rally and because this publicity resulted in a higher offer from the University, which is what Charly wanted.

¶ 40. Because the parties did not focus in the circuit court on consideration for the option separate from consideration for the sale, the court understandably did not refer to this issue in its factual findings and legal conclusions. The court found that Charly "took personal satisfaction in selling the building to Bogle for

use as a primate museum . . . [either] because he was insulted by a previous offer the UW made . . . or because he didn't like . . . the animal research facilities in that location." In concluding this did not constitute consideration, the court reasoned that it was not bargained for: Charly did not request it and there was no requirement in the written agreement between the parties that the property be used for a museum.

¶ 41. We do not address the argument that the personal satisfaction Charly derived from selling the property for use as a primate museum constitutes consideration because that satisfaction—even if we were to assume it could constitute consideration—is not consideration separate from the sale. Instead, we confine our analysis to the benefit the plaintiffs assert Charly obtained independent from the sale—Charly's personal satisfaction at "tweaking" the University through the announcement of the prospective sale and the resulting higher offer from the University. We conclude that neither constitutes consideration for the option because neither was bargained for.

¶ 42. As for the satisfaction Charly derived from "tweaking" the University with the public announcement of the prospective sale, there is no evidence he requested that the option be publicized or that a rally be held. As for the higher offer the University made after the publicity, that offer—to state the obvious— cannot logically be the subject of bargaining between the parties to the option.

¶ 43. There is in addition a more fundamental flaw in the proposition that a higher offer from a third party prompted by an option can constitute the consideration needed to make the option a binding option contract: there is no benefit to the optioner unless he

or she either breaches the option contract or the optionee does not exercise the option.

¶ 44. Fourth, the plaintiffs contend that their efforts to obtain financing constitute consideration for the option, given the evidence that Charly knew they needed to raise money in order to purchase the property. The circuit court rejected this argument for several reasons: the agreement in this case was silent on the buyer's efforts to obtain financing; the evidence was that McLellan did nothing in connection with this project between mailing the signed option back and receiving notification that the option was being declared void; any agreement between Bogle and McLellan that Bogle would raise money to pay McLellan could not serve as consideration for the agreement between McLellan and Charly; and the cases on which the plaintiffs relied from other jurisdictions were distinguishable because in those cases the agreement to obtain financing was bargained for.

¶ 45. Focusing our attention on separate consideration for the option, we, like the circuit court, reject the plaintiffs' argument. The written agreement is silent on financing. There is no evidence that Charly requested that anything be done with respect to financing and the evidence is that McLellan did nothing.

¶ 46. The plaintiffs provide no authority for the proposition that Bogle's efforts to raise money to repay McLellan could constitute consideration for the option Charly gave McLellan simply because Charly knew Bogle was going to do that. While the cases they cite hold or support the proposition that in certain circumstances the optionee's efforts to obtain financing may constitute the requisite separate consideration for an

option contract, none suggest that the efforts of a person in Bogle's situation might do so. *See Ragan v. Schreffler*, 306 S.W.2d 494, 498–99 (Mo. 1957) (option was supported by separate consideration in the form of the optionee's efforts to obtain a loan, where there was evidence that the optioner wanted to sell the property, the option stated that it was given to enable the optionee to obtain a loan to purchase the property, and the option also stated that it was agreed that the optionee's efforts to obtain the loan "constitute a part of the consideration for this option"); *Mack v. Coker*, 523 P.2d 1342, 1344 (Ariz. Ct. App. 1974) (consideration for option existed where option agreement specifically stated that buyer's efforts to obtain a loan constituted part of consideration for the option); *White & Bollard, Inc. v. Goodenow*, 361 P.2d 571, 575 (Wash. 1961) (consideration for promise to sell existed where the agreement required buyer to exert best efforts to obtain financing); *Schultz v. Union Cent. Life Ins. Co.*, 271 N.W. 249, 250–51 (Minn. 1937) (modification to contract for deed was supported by consideration where seller benefitted by receiving money, though somewhat less, at an earlier date and buyers experienced a legal detriment because, at urging of seller's agent, they sought a loan and reduced personal expenses to pay off debts in order to qualify for loan).

¶ 47. In summary, based on the circuit court's factual findings, we conclude the presumption of consideration is rebutted because there is no evidence of consideration for the option that is separate from the consideration for the sale. Therefore, the option was not a binding and irrevocable contract and could be withdrawn at any time before it was exercised within the prescribed time period. *Bratt*, 31 Wis. 2d at 451.

### III. Promissory Estoppel

¶ 48. The plaintiffs assert that, if the option is unenforceable because of lack of consideration, they are entitled to an order conveying the property based on the doctrine of promissory estoppel. They seek to enforce with this doctrine the oral promise Charly made to Bogle to sell the property to him for $750,000. They contend that, in reliance on this promise, Bogle took various actions of which Charly was aware, which included efforts to find financing, which he was ultimately able to arrange with McLellan, moving to Madison with his wife instead of continuing to look for teaching jobs, public fundraising after the agreement between McLellan and Charly was signed, which cost him approximately $15,000 for the initial mailing, and holding the rally.

¶ 49. In the plaintiffs' initial briefing on promissory estoppel they tended to merge the promise Charly made to Bogle with the promise expressed in the option.[10] We view the two promises as separate bases for two distinct theories for relief under the promissory estoppel doctrine. Accordingly, we analyze them separately. We conclude that none of the plaintiffs are entitled to enforcement of either promise.

¶ 50. A party is entitled to prevail on a claim of promissory estoppel if (1) the promise is one that the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise induced such action or forbearance; and (3) injustice can be avoided

---

[10] For this reason, our order for supplemental briefing included the question "is there evidence that McLellan reasonably relied to his detriment on the option . . . ."

only by enforcement of the promise. *Skebba v. Kasch*, 2006 WI App 232, ¶¶ 8–9, 297 Wis. 2d 401, 724 N.W.2d 408 (citing *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965)). The first two of these requirements are facts to be found by the fact finder, *Hoffman*, 26 Wis. 2d at 698, and we therefore apply the clearly erroneous standard of review to the circuit court's factual findings. Wis. Stat. § 805.17(2). The third is a policy decision to be made by the court, *Hoffman*, 26 Wis. 2d at 698, and our review is de novo. *Tynan v. JBVBB, LLC*, 2007 WI App 265, ¶ 13, 306 Wis. 2d 522, 743 N.W.2d 730.

¶ 51. In making this policy decision, a court must consider a number of factors in determining whether injustice can be avoided only by enforcement of the promise:

> (a) the availability and adequacy of other remedies, particularly cancellation and restitution;

> (b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

> (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

> (d) the reasonableness of the action or forbearance; [and]

> (e) the extent to which the action or forbearance was foreseeable by the promisor.

*U.S. Oil Co., Inc. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 91–92, 440 N.W.2d 825 (Ct. App. 1989).

¶ 52. In deciding that the doctrine of promissory estoppel did not support enforcement of Charly's promise to Bogle, the court made a number of factual findings. It found that Bogle moved to Madison and started fundraising after having only a couple brief conversations with Charly and it was not reasonable to rely on a promise "obtained by walking into a store and having a brief conversation with a stranger about a real estate transaction of three quarters of a million dollars." Thus, the court found, Charly could not reasonably anticipate that his promise would "induce action or [inaction] of a definite and substantial character" on the part of Bogle. The court also found that the evidence did not show that Bogle's move to Madison and fundraising efforts were to his detriment. It further found that, because of Bogle's role in the negotiation of the agreement between McLellan and Charly, Bogle "could not possibly have believed that he still had a valid offer to sell the property to him." Finally, the court found that the promise Charly initially made to Bogle was of a preliminary nature and was never intended as the final agreement; instead, it was the beginning of negotiations for a more formal written agreement, for which Bogle obtained an attorney. The court reasoned that the doctrine of promissory estoppel was not intended to convert contract negotiations into an enforceable promise.

¶ 53. We accept the circuit court's findings because they are not clearly erroneous and we agree with the court's policy decision that justice does not require enforcement of Charly's promise to Bogle.[11] The evidence

---

[11] The plaintiffs contend the circuit court did not properly consider the factors relevant to the policy element. We disagree. Its factual findings relate to appropriate factors for that ele-

supports a finding that, when Charly offered to sell the property for $750,000, both he and Bogle understood that they would negotiate the specific terms of the sale, and they did so. The written agreement that resulted was between Charly and McLellan, with Bogle's involvement, agreement, and consultation with counsel. The steps Bogle took that he claims were to his detriment before the written agreement between McLellan and Charly was executed—moving to Madison and attempting to obtain financing—were in furtherance of the anticipated written agreement that did in fact occur. The steps he took after that—public fundraising and the rally—were not in reliance on Charly's promise to him, but on the written agreement between McLellan and Charly. As the court found, Bogle "could not possibly believe that he had a valid offer from Charly to sell the property to him" in spite of the written agreement he was instrumental in negotiating under which it was to be sold to McLellan. As a policy matter, in these circumstances justice does not require the enforcement of Charly's initial promise to sell the property to Bogle for $750,000. It is fair not to, in effect, revive that initial promise to Bogle when he was involved with and approved of the written agreement that evolved from that.[12]

---

ment, some of which overlap with the first and second elements. We add, though, that if a court finds either the first or second element lacking, there is no need to consider the policy element, because all three elements are required.

[12] One of the defenses Charly raised against enforcement of his promise to Bogle is that the statute of frauds for conveyances applies, WIS. STAT. § 706.02, and because the promise was oral, it is not enforceable unless the requirements for equitable relief in WIS. STAT. § 706.04 are met, and they are not. Section 706.04 provides:

653

¶ 54. We next consider the option as the promise potentially affording relief—specifically, Charly's writ-

**Equitable relief.** A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:

(1) The deficiency of the conveyance may be supplied by reformation in equity; or

(2) The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied; or

(3) The party against whom enforcement is sought is equitably estopped from asserting the deficiency. A party may be so estopped whenever, pursuant to the transaction and in good faith reliance thereon, the party claiming estoppel has changed his or her position to the party's substantial detriment under circumstances such that the detriment so incurred may not be effectively recovered otherwise than by enforcement of the transaction, and either:

(a) The grantee has been admitted into substantial possession or use of the premises or has been permitted to retain such possession or use after termination of a prior right thereto; or

(b) The detriment so incurred was incurred with the prior knowing consent or approval of the party sought to be estopped.

It is not clear whether the plaintiffs dispute the applicability of Wis. Stat. § 706.02, and, thus, the necessity for fulfilling the requirements of Wis. Stat. § 706.04. However, we understand their position to be that, if these requirements apply, they are met. Neither party presents a developed argument on the relationship between a claim of promissory estoppel and a defense based on the statute of frauds for conveyances, now that Wis. Stat. ch. 706 has a codified provision for equitable relief. In *U.S. Oil Co., Inc. v. Midwest Auto Care Services, Inc.*, in the context of the statute of frauds for certain other types of contracts in Wis. Stat. § 241.02, we referred to the well-established rule that equity may bar a defendant from invoking the statute of frauds, noted that the doctrine of past perfor-

ten promise to McLellan that he would not revoke the offer to sell the property on the specified terms to McLellan for 180 days plus an additional ninety days if McLellan chose. We have already concluded that Charly's promise not to revoke the offer was not supported by consideration separate from that for the sale. We agree with the plaintiffs that this failure of consideration does not in itself bar enforcement of the promise under the doctrine of promissory estoppel. In adopting the doctrine in *Hoffman*, the court explained:

> Originally the doctrine of promissory estoppel was invoked as a substitute for consideration rendering a gratuitous promise enforceable as a contract. *In other words, the acts of reliance by the promisee to his detriment provided a substitute for consideration . . . .* However, sec. 90 of Restatement, 1 Contracts [which the court adopted], does not impose the requirement that the promise giving rise to the cause of action must be so comprehensive in scope as to meet the requirements of an offer that would ripen into a contract if accepted by the promisee.

26 Wis. 2d at 697–98 (citation omitted) (emphasis added).

---

mance and equitable estoppel were now codified in § 706.04 for real property interests only, and concluded that the statute of frauds in § 241.02 did not bar a claim of promissory estoppel. 150 Wis. 2d 80, 90–91 & n.20, 440 N.W.2d 825 (Ct. App. 1989).

The circuit court here did not determine the precise relationship between the promissory estoppel claim and Charly's statute of frauds defense. Instead, it concluded that Charly's promise to Bogle was not enforceable under either the doctrine of promissory estoppel or the equitable relief provision of Wis. Stat. § 706.04. We do not understand the plaintiffs to argue that there is any reason for us to consider Wis. Stat. § 706.02 and § 706.04 if we conclude the circuit court properly denied relief under the doctrine of promissory estoppel. Therefore we do not address those statutes.

¶ 55. Charly's argument to the contrary is based on case law holding that, where a contract covers all the details of the relationship between the parties, the doctrine of promissory estoppel is not a permissible vehicle for, in effect, adding terms to the contract. *See Goff v. Massachusetts Protective Ass'n, Inc.*, 46 Wis. 2d 712, 717, 176 N.W.2d 576 (1970) (employment contract that permitted termination was a complete defense to claim that promissory estoppel precluded termination); *Kramer v. Alpine Valley Resort, Inc.*, 108 Wis. 2d 417, 421–22, 321 N.W.2d 293 (1982) (however, even if there is a contract, if it does not embody all the terms of the business relation between the parties, it does not bar relief under the doctrine of promissory estoppel); *Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶¶ 53, 61, 265 Wis. 2d 703, 666 N.W.2d 38 (party may not use the doctrine of promissory estoppel to resort to extrinsic evidence to establish terms of a contract that are not contained in the plain language of the contract and are inconsistent with it). However, the principle Charly invokes assumes a valid contract and the point is to prevent relying on promises made but not included in the written contract in order to add to or modify the terms of the written contract. *See id.* This principle is not implicated when there is no valid contract—here, no valid option contract—because of the lack of consideration.

¶ 56. We turn, then, to the question whether Charly's promise of the option induced McLellan to take any action or forbearance of a definite and substantial character. The circuit court, in the context of its findings on consideration, accepted McLellan's testimony that he did nothing in connection with the project between mailing the option back and receiving notification that the option was being declared void. The plaintiffs point

to McLellan's efforts to negotiate the agreement with Charly—his consultation with real estate attorneys, his flying to Madison to meet with Charly, his "work[ing] through several versions of the parties' written agreement," and his signing and having the contract notarized while he was in Europe. However, these efforts—all typical steps in negotiating an agreement—*preceded* Charly's promise, embodied in the option provisions of the written agreement, that he would not revoke the offer to sell on the specified terms for at least 180 days. Based on the circuit court's findings, we conclude McLellan is not entitled to enforcement of the option under the doctrine of promissory estoppel.

¶ 57. For the first time in their supplemental brief, the plaintiffs argue that we should consider the actions of Bogle and the Primate Freedom Project that the option induced them to take. The actions they identify that occurred after the agreement was executed are Bogle's fundraising efforts and organization of the rally. Recognizing that Charly made the promise of the option to McLellan, not to Bogle, the plaintiffs cite to the RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981), which permits consideration of action by a third person. It provides in relevant part:

> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee *or a third person* and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

(Emphasis added.) In a footnote, the plaintiffs point out that in *Hoffman* the supreme court adopted the predecessor version of this section, which did not have the reference to a third person. They add that the 1981 version of the RESTATEMENT (SECOND) OF CONTRACTS § 90

657

(1981) "has since been cited favorably by Wisconsin courts." However the plaintiffs do not cite the cases or further develop an argument as to why this court should adopt the revised § 90 version as it applies to third parties.

¶ 58. We decline to decide whether to adopt the RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981) insofar as it applies to third parties. The plaintiffs' argument on this point is not developed sufficiently to allow a reasoned analysis. In addition, because they did not make this argument in the circuit court and instead focused on Bogle's reliance on Charly's oral promise to him, the circuit court's findings on Bogle's actions for promissory estoppel purposes have the same focus. The court did not make critical findings on whether Charly should have reasonably expected to induce action or inaction by Bogle as a result of the option he gave to McLellan and did not make other factual determinations that are necessary to the policy decision of whether injustice to Bogle can be avoided only by enforcing the option.

¶ 59. Based on existing law, we are not persuaded that Bogle is entitled to enforce the option under the doctrine of promissory estoppel. Because the plaintiffs do not present a separate argument for the Primate Freedom Project, we reach the same conclusion as to that entity.

## CONCLUSION

¶ 60. With respect to the claims for breach of the option, we conclude that, in order to make the option a binding contract, consideration is required that is separate from the consideration for the sale. We further conclude that the leaseback and repurchase provisions

are not consideration separate from the consideration for the sale. Finally, we conclude that the other grounds the plaintiffs advance as separate consideration—intent to be bound by the option, Charly's personal satisfaction, and Bogle's efforts to obtain financing—do not constitute the requisite separate consideration for the option. Charly was therefore free to revoke the option. Accordingly, we hold that the circuit court should have dismissed McLellan's breach of contract claim in addition to dismissing the breach of contract claims of Bogle and the Primate Freedom Project.

¶ 61. With respect to the plaintiffs' claims for relief under the doctrine of promissory estoppel, we conclude Bogle is not entitled to enforcement of Charly's oral promise to him under this doctrine and none of the three plaintiffs are entitled to enforcement of the option under this doctrine.

¶ 62. Accordingly, we affirm the circuit court in part, reverse in part, and remand with instructions to dismiss the complaint. On remand the court is also directed to vacate its order dismissing Charly's counterclaim and enter an order consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.